FOURTH DIVISION

November 14, 2002

No. 1-01-2123

JI AVIATION, INC., ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

) No. 99 L 51105

)

THE DEPARTMENT OF REVENUE ) Honorable

and KENNETH E. ZEHNDER, Director of ) Joanne L. Lanigan,

the Department of Revenue, ) Judge Presiding.

)

Defendants-Appellants. )

JUSTICE GREIMAN delivered the opinion of the court:

This is an action for administrative review of the Illinois Department of Revenue's (the Department) determination that plaintiff JI Aviation, Inc. (JI Aviation), owed state use tax on its purchase of a corporate jet.  The circuit court reversed the Department and subsequently denied reconsideration.  The Department now appeals, and no issues are raised on the pleadings.  For the reasons that follow, we affirm.

The following undisputed facts have been set forth in the fully stipulated factual record.  

On May 25, 1994, JI Aviation and Richland Development Corp. entered into an "Aircraft Acquisition Agreement" (Agreement) regarding a Gulfstream G-II aircraft.  Richland is a subsidiary of the Pennzoil Company, which manages Pennzoil's real estate holdings and provides staff support to Pennzoil and its affiliates.  In the Agreement, Richland made a representation to JI Aviation that it was a nonretailer, that its sale of the Gulfstream G-II was an isolated or occasional sale, and that it was not engaged in the business of selling airplanes at retail.  JI Aviation agreed to pay Richland $3.9 million for the airplane by depositing this sum in an escrow account controlled by Richland.  As a deposit on the airplane, JI Aviation transferred $50,000 of the purchase price to the escrow account.  Disbursal of funds from the escrow account, transfer of title to JI Aviation, and other actions necessary to close the sale were also controlled by Richland.

Richland agreed to deliver possession of the Aircraft to JI Aviation in Manchester, New Hampshire.  JI Aviation agreed to reimburse Richland for certain closing costs, including the expense of flying the airplane from Savannah, Georgia, to Manchester, New Hampshire.  According to the Agreement, upon Richland's physical delivery of the airplane to JI Aviation, title to the airplane would pass "from Richland to JI Aviation free and clear."

However, another provision in the Agreement permitted Richland to receive the purchase price and transfer title through the Nationsbanc Leasing Corporation of North Carolina as an accommodation to Richland.  Unlike Richland, Nationsbanc is a retailer of aircraft.  The entire purpose of that provision was to effectuate a like-kind exchange pursuant to section 1031 of the Internal Revenue Code (the Code) (I.R.C. §1031 (1989))
(footnote: 1) by exchanging the Gulfstream G-II for a Gulfstream G-IV aircraft, which Nationsbanc had acquired on behalf of Richland.  In other words, Richland was to transfer legal title to the Gulfstream II through Nationsbanc in return for a Gulfstream G-IV, and then Nationsbanc was to deliver legal title to the Gulfstream G-II to JI Aviation and was to receive the purchase price of $3.9 million.

On June 3, 1994, Richland entered into an assignment and assumption agreement with Nationsbanc whereby it agreed to "transfer full legal and valid title to the Gulfstream G-II aircraft to [Nationsbanc] free and clear of any and all liens, pledges, mortgages, security interests or other encumbrances of any type."  On that same date, a Federal Aviation Administration (FAA) Aircraft bill of sale was prepared showing Richland as the "seller" and Nationsbanc as the "purchaser" of the aircraft.  Specifically, the bill of sale executed that day shows Richland as the seller and Nationsbanc as the purchaser of the Gulfstream G-II "in consideration of a reduction in the purchase price of the G-IV Aircraft to the extent of $3,900,000 received from the purchaser."  Also on that date, Nationsbanc issued a warranty bill of sale for the Gulfstream G-II to JI Aviation.  In it, Nationsbanc warranted:

"(i) Seller has received a Warranty Bill of Sale from Richland Development Corporation and an Aircraft Bill of Sale on Federal Aviation Administration Form 8050-2 from Richland Development Corporation purporting to transfer title in the Aircraft to Seller; (ii) Seller has good and lawful right to sell its right title and interest in and to the Aircraft to Purchaser; (iii) such title transferred hereunder is transferred to Purchaser free from any lien, charge or encumbrance created by or through Seller, and (iv) Seller, at its sole cost, will defend said title transferred hereunder forever against the claims of any and all third parties."

Also pursuant to the assignment and assumption agreement, Nationsbanc was at all times contractually bound to transfer legal title to JI Aviation and reconvey the funds it received for the benefit of Richland.  Further, Richland fully indemnified Nationsbanc for title it received and reconveyed to JI Aviation, and all of Richland's obligations to JI Aviation under the agreement survived the assignment and transfer of bare legal title from Richland through Nationsbanc to JI Aviation.

Accordingly, on June 3, 1994, once the Gulfstream G-II arrived in Manchester, New Hampshire, JI Aviation directed that a payment be wired to the escrow agent's account for $3,864,141, which consisted of the $3.85 million purchase price balance plus closing costs of $14,141 paid by JI Aviation.  Richland then instructed the escrow agent to file the FAA bill of sale, which transferred title from Richland to Nationsbanc, with the FAA at 2:49 p.m., and to file the warranty bill of sale, which transferred title from Nationsbanc to JI Aviation, one minute later at 2:50 p.m.  

On October 14, 1997, the Department issued a notice of tax liability, which proposed an assessment of use tax, a late filing penalty, and interest against JI Aviation in the amount of $369,976 for JI Aviation's acquisition of title to the Gulfstream G-II from Nationsbanc.  On March 12, 1998, JI Aviation filed a protest and a request for an informal review and hearing, arguing that it was Richland, not Nationsbanc, that had sold the aircraft to JI Aviation, and that the transaction was exempt from use tax as an occasional sale.  Under section 1 of the Retailers' Occupation Tax Act (35 ILCS 120/1 (West 1994)): 

"The isolated or occasional sale of tangible personal property at retail by a person who does not hold himself out as being engaged (or who does not habitually engage) in selling such tangible personal property at retail, or a sale through a bulk vending machine, does not constitute engaging in a business of selling such tangible personal property at retail within the meaning of this Act ***."

Moreover, under section 3-65 of the Use Tax Act (35 ILCS 105/3-65 (West 1994)): 

"If the seller of tangible personal property for use would not be taxable under the Retailers' Occupation Tax Act despite all elements of the sale occurring in Illinois, then the tax imposed by this Act does not apply to the use of the tangible personal property in this State."

JI Aviation further claimed that the late filing penalty and related interest should be withdrawn because JI Aviation had a reasonable basis for failing to file a use tax return on this transaction.

After briefing, the administrative law judge (ALJ) issued a recommendation for disposition, affirming the notice of tax liability.  On August 17, 1999, the Director of the Department accepted the ALJ's recommendation, making it a final administrative determination.  The Department's decision upheld the proposed use tax assessment against JI Aviation and the ALJ concluded:

"[T]axpayer does not have the right to assert that the substance of the transaction, rather than the form, should prevail.  There is no consistency in the taxpayer's characterization of the transaction.  This taxpayer should not be allowed to avoid Use Tax, while one of the other parties [Richland] to the transaction prevailed at the federal level by characterizing the transaction differently and with the full knowledge and consent of JI Aviation."  

The ALJ also refused to abate for "reasonable cause" the late filing penalty imposed by the Department against JI Aviation for similar reasons.

JI Aviation timely filed a complaint for administrative review in the circuit court of Cook County.  In the circuit court, the Department framed the legal issue for the court's determination as follows:

"[T]he only legitimate question that this Court must answer is whether JI Aviation can require the Department to ignore the form of the transaction, and give tax effect to the substance of the transaction, which does appear to be a sale of the aircraft in question from Richland to JI Aviation."

In its decision, the circuit court reasoned that economic realities determine tax consequences and that the "substance over form" doctrine requires that the use of a conduit, Nationsbanc, to transfer property must be ignored for Illinois tax purposes.  Specifically, the court held:

"Both parties were consistent in their characterization of this transaction.  Richland was the seller both for federal and state tax purposes.  There was no economic substance in the transfer of bare legal title by Nationsbanc to JI Aviation."

Accordingly, in determining that the sale of the aircraft occurred from Richland to JI Aviation, the court determined that it was a nontaxable occasional sale under the Illinois Use Tax Act. 

Initially, the parties disagree as to the appropriate standard of review.  The Department notes that JI Aviation sought judicial review of the Department's final administrative decision under Administrative Review Law (735 ILCS 5/3-101 (West 1998)).  On appeal from the circuit court's judgment, this court reviews the administrative agency's decision and not that of the circuit court.  
XL Disposal Corp. v. Zehnder
, 304 Ill. App. 3d 202, 207 (1999).  Moreover, under the Administrative Review Law, "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct."  735 ILCS 5/3-110 (West 1998).  The agency's factual findings are entitled to deference and will be reversed only if against the manifest weight of the evidence.  
XL Disposal
, 304 Ill. App. 3d at 207; 
Metropolitan Water Reclamation District of Greater Chicago v. Department of Revenue
, 313 Ill. App. 3d 469, 475 (2000), citing 
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 98 (1992) (deference is owed an administrative agency's determination based on its experience and expertise and the recognition that such an agency can be an informed source of legislative intent).  However, the Department also notes that pure questions of law are not entitled to the same deference and are reviewed 
de novo
.  
XL Disposal
, 304 Ill. App. 3d at 207. 

Here, the Department determined that JI Aviation was not entitled to an "occasional sale" exception from the use tax for the purchase of the Gulfstream G-II.  In making that determination, it examined the legal effect of a given set of facts to which the parties had stipulated.  The Department argues that the question decided, therefore, was neither factual nor legal but was a "mixed question of law and fact."  See 
AFM Messenger Service, Inc. v. Department of Employment Security
, 198 Ill. 2d 380, 391 (2001) ("[a] mixed question of law and fact is one ‛involv[ing] an examination of the legal effect of a given set of facts.' [Citation.]  Stated another way, a mixed question is one ‛in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or *** whether the rule of law as applied to the established facts is or is not violated.' [Citations.]").  

Accordingly, as a mixed question of law and fact, the Department concludes that this is reviewable under a "clearly erroneous" standard (
XL Disposal
, 304 Ill. App. 3d at 207), which is "significantly deferential" (
AFM Messenger
, 198 Ill. 2d at 393).  Again, this standard acknowledges "the wisdom of judicial deference to an agency's experience and expertise" (
AFM Messenger
, 198 Ill. 2d at 394) and requires that an agency's determination be reversed "only where the reviewing court, on the entire record, is ‛left with the definite and firm conviction that a mistake has been committed.' " 
AFM Messenger
, 198 Ill. 2d at 395, quoting 
United States v. United States Gypsum Co.
, 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948).  See also 
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 204 (1998).

JI Aviation responds that this case presents a question of law; namely, does the "substance over form" doctrine require that a purchase from a nonretailer, which uses a retailer conduit to convey title, be treated as a nontaxable sale for Illinois tax purposes?  JI Aviation notes this court has consistently held that where review of an administrative agency's decision presents no factual disputes and only addresses a legal issue, the administrative agency's conclusions of law are reviewed 
de novo
.  See 
Armour Pharmaceutical Co. v. Department of Revenue
, 321 Ill. App. 3d 662, 665-66 (2001) ("we are not asked to review any factual findings by the Department.  Rather, the issue before us only involves a question of law, specifically, whether Armour's recycled alcohol is a ‛by-product of manufacturing' excepted from use taxation under section 2 of the Use Tax Act.  Therefore, our standard of review is 
de novo
"); 
Rockwood Holding Co. v. Department of Revenue
, 312 Ill. App. 3d 1120, 1123 (2000) ("the parties to this appeal do not present any factual disputes; only the legal issues are in controversy.  Consequently, we are not bound by the administrative agency's conclusions of law or statutory construction and we will review those decisions 
de novo
 ").  In addition, JI Aviation argues that this court recently addressed the issue of substance over form as a question of law subject to 
de novo
 review in 
Weber-Stephen Products, Inc. v. Department of Revenue
, 324 Ill. App. 3d 893, 898 (2001).  There
, this court reviewed the circuit court's ruling on cross-motions for summary judgment on a stipulated factual record, a procedural setting that JI Aviation claims is indistinguishable from the instant case for purposes of determining the standard of review.

In its motion to cite additional authority, JI Aviation also cites the recent case of 
Blessing/White, Inc. v. Zehnder
, 
329 Ill. App. 3d 714 (2002).  There, this court analyzed the supreme court's decision in 
City of Belvidere
 and compared the factual situation in 
City of Belvidere
 to the facts before it.  Significantly, 
Blessing/White
 stated:

"In 
City of Belvidere
, the supreme court applied the clearly erroneous standard in reviewing the ruling of the Illinois State Labor Relations Board (ISLRB or Board) that found the City of Belvidere guilty of an unfair labor practice under the Illinois Public Labor Relations Act (5 ILCS 315/1 
et seq.
 (West 1994)) when it refused to bargain with a firefighters union concerning its decision to contract out paramedic services to a private company. Characterizing the ISLRB's ruling as a mixed question of fact and law, the court explained the Board's determination was, in part, factual because it involved a consideration of whether the facts supported a finding that the city's decision ‛affected wages, hours and other conditions of employment' (
City of Belvidere
, 181 Ill. 2d at 205, 692 N.E.2d at 302), a primary consideration in determining an employer's duty to bargain under the labor act.  While the evidence in this respect was undisputed, the ISLRB was nonetheless required to make certain factual findings.  In particular, the Board had to examine the evidence and ascertain: whether the city had an established operating procedure and, if so, whether the city's decision constituted a departure from that practice; the conditions of the firefighters' employment and how they were affected by the city's decision (
i.e.
, whether the firefighters were deprived of potential work or promotional opportunities); and whether the firefighters, by the nature of their position, had a reasonable expectation to provide paramedic services to the city's residents.  
City of Belvidere
, 181 Ill. 2d at 201, 692 N.E.2d at 300.

The supreme court further explained the ISLRB's decision also involved a question of law because the statutory phrase ‛ "wages, hours and other conditions of employment" ' is a legal term that required interpretation.  
City of Belvidere
, 181 Ill. 2d at 205, 692 N.E.2d at 302.  Stating a mixed question of fact and law was presented by the agency's decision ‛because [the] case involve[d] an examination of the legal effect of a given set of facts,' the court reviewed the agency's determination for clear error.  
City of Belvidere
, 181 Ill. 2d at 205, 692 N.E.2d at 302.

The Department contends that the instant case, like the case in 
City of Belvidere
, concerns the legal effect of a given set of facts and, thus, represents a mixed question to be reviewed under the clearly erroneous standard.  We disagree. While the facts before the Department, like the facts before the ISLRB, were not in dispute, the Department was not required, like the labor board, to draw any additional factual findings from the evidence.  The only issue before the Department was whether BWI's gain from the 1989 asset sale constitutes business income under the functional test.  Not only did the parties stipulate that the disposed assets produced income for BWI and, thus, were essential to the company's business, the parties further stipulated that BWI ceased its activities in Illinois and distributed the sale proceeds to the company's shareholders shortly after the transaction.  Under these circumstances, the Department's decision represents a legal determination subject to 
de novo
 review.  See 
Taylor v. Cook County Sheriff's Merit Board
, 316 Ill. App. 3d 574, 579, 736 N.E.2d 673, 677 (2000) (‛[t]he legal effect of undisputed facts is a question of law, and the appellate court considers the propriety of the determination 
de novo
')."  
Blessing/White
, 329 Ill. App. 3d at 727-28.

In a footnote, this court then emphasized:  

"We do not believe 
City of Belvidere
 holds, as suggested by the Department, that a mixed question of fact and law is always presented whenever a case involves ‛an examination of the legal effect of a given set of facts.'  In essence, every case involves such an examination.  The supreme court's statements in 
City of Belvidere
 must be read in its proper context and with the understanding that while the facts before the agency there were not in dispute, the agency was nevertheless required to draw further findings from the evidence."  
Blessing/White
, 329 Ill. App. 3d at 728 n. 11.

Initially, we disagree with JI Aviation that 
Weber-Stephen
 provides any guidance as to the proper standard of review.  As that case involved the review of a grant of summary judgment in a protest fund action, and did not involve an administrative review action, it was in an entirely different posture than the present case.  Moreover, we find that JI Aviation's citation of 
Blessing/White
 is insufficient to demonstrate that this case only involves an issue of law.  In explicating its finding for a 
de novo
 review, the 
Blessing/White
 court made specific reference to the fact that it did not have "to draw any additional factual findings from the evidence" (
Blessing/White
, 329 Ill. App. 3d at 727), 
unlike
 the supreme court in 
City of Belvidere
.  

In the present case, we think that the Department's determination was, in part, factual because it involved a consideration of which entity actually sold the airplane to JI Aviation, which was the only consideration in determining JI Aviation's potential liability under the Use Tax Act.  While the evidence in this respect was unchallenged, the Department, like the ISLRB in 
City of Belvidere
, was nonetheless required to make certain factual findings.  Specifically, the Department had to analyze the evidence and discern whether Nationsbanc was acting as Richland's agent; whether the documents suggest a "retail sale" from Richland as seller to Nationsbanc as purchaser; and whether Nationsbanc retained any control over the transaction with regard to purchase price, warranties of title, or any other warranties concerning the aircraft. 

In light of these analyses and the ultimate legal question as to whether the purchase fit under the "occasional sale" exception to the use tax, we characterize the Department's ruling as a mixed question of law and fact.  In so doing, we apply the clearly erroneous standard in reviewing the Department's ruling which, as stated in 
AFM Messenger
, is "significantly deferential," and will reverse the Department's ruling " ‛when although there is evidence to support it, [we] * * * [are] left with the definite and firm conviction that a mistake has been committed.' " 
AFM Messenger
, 198 Ill. 2d at 393, quoting 
United States Gypsum Co.
, 333 U.S. at 395, 92 L. Ed. at 766. 68 S. Ct. at 542.  Nevertheless, as the court in 
AFM Messenger
  pointed out, "[t]hat the clearly erroneous standard is largely deferential does not mean, however, that a reviewing court must blindly defer to the agency's decision."  
AFM Messenger
, 198 Ill. 2d at 395.
(footnote: 2)
 In 
Weber-Stephen
, this court previously described the statutory framework of what is commonly known as the Illinois sales tax:

"Illinois ‛sales tax' consists of two separate, complementary taxes, the retailers' occupation tax and the use tax.  
Brown v. Zehnder
, 295 Ill. App. 3d 1031, 1034, 693 N.E.2d 1255, 1258 (1998).  The ROTA [Retailers' Occupation Tax Act] imposes an occupational tax upon retailers, persons engaged in the business of selling at retail tangible personal property. [Citations.]  Under ROTA, Illinois retailers are required to remit to the State a percentage of the gross receipts of every retail sale. [Citation.] The use tax is assessed the same way and on the same transactions, but the UTA [Use Tax Act] imposes a tax on the purchaser-user of the property for the privilege of using this property in Illinois, regardless of where the sale occurred. [Citations.]  The State therefore benefits by taxing in-state retailers and purchases and also out-of-state purchases by consumers for use in Illinois which could not be reached by the ROTA.

When a single purchase occurs, Illinois retailers collect both forms of sales tax from the consumer.  However, if the retailer pays the ROTA tax to the State, he or she does not have to pay, and may keep, the use tax. [Citations.]  If the retailer is outside Illinois and therefore has no ROTA or UTA obligations, the purchaser-user in Illinois must pay the use tax directly to the State. [Citations.]

The UTA does not apply to out-of-state transactions that would be exempt under the ROTA if the sale occurred in Illinois. [Citations.]  If a seller of personal property is excluded from paying the ROTA tax, despite all elements of the sale occurring in Illinois, then the user of that property is also excluded from the imposition of use tax. [Citations.] " 
Weber-Stephen
, 324 Ill. App. 3d at 898-99. 

As noted, section 1 of the Retailers' Occupation Tax Act provides an exception for the "occasional sale" by a nonretailer and, therefore, under section 3-65 of the Use Tax Act, the purchaser-user would not incur use taxes.

Substantively, the Department simply argues that JI Aviation purchased the aircraft from Nationsbanc and not from Richland.  For this, the Department references near-identical case of 
Weber-Stephen
, where this court found that the sale of a "Hawker" aircraft in a transaction involving four parties was not an "occasional sale" from the original owner to the ultimate purchaser and, thus, that use tax was due on Weber-Stephen's purchase from JB&A Aviation, Inc. (JB&A).  JB&A had previously acquired title to the Hawker from a nonretailer, Chase Manhattan Bank (Chase) through Smith/Ellis, which had acted as a conduit to facilitate Chase's like-kind exchange of the aircraft for a "Challenger" aircraft.  Weber-Stephen, the ultimate purchaser, argued that in substance, this was a non-taxable sale by Chase directly to Weber-Stephen, and that JB&A and Smith/Ellis had both merely acted as conduits in conveying title and purchase price.  The court accepted the argument for ignoring Smith/Ellis as a conduit, but rejected that argument from JB&A.  
Weber-Stephen
, 324 Ill. App. 3d at 901-02.  The court ruled that JB&A, in substance, purchased the Hawker from Chase, taking title through Smith/Ellis, and then JB&A resold the Hawker to Weber-Stephen.

The Department argues that the court relied on the statutory definition of a "sale at retail" as " ‛any transfer of the ownership of or title to tangible personal property to a purchaser, for the purpose of use *** for a valuable consideration.' "  
Weber-Stephen
, 324 Ill. App. 3d at 899, quoting Ill. Rev. Stat. 1989, ch. 120, pars. 440, 439.2.  Reviewing Illinois case law, the court then noted that "Illinois courts historically have focused on the transfer of title as indicative that a ‛sale at retail' has taken place."  
Weber-Stephen
, 324 Ill. App. 3d at 899.  It then rejected Weber-Stephen's argument that transfer of title could be ignored where, among other things, the parties' own documents listed JB&A as the seller of the aircraft and JB&A issued a warranty deed on the aircraft.  
Weber-Stephen
, 324 Ill. App. 3d at 901. 

In addition, the Department notes that the court also rejected Weber-Stephen's argument that the wording of the transaction documents could be ignored where that wording was only used to qualify for Code section 1031 federal tax treatment.  
Weber-Stephen
, 324 Ill. App. 3d at 902-03.  The court found:

"Weber-Stephen's contention is fundamentally flawed.  Weber-Stephen is unable to direct us to any portion of the Illinois tax code or case precedent for the proposition that Illinois use tax liability should be excused when a taxpayer receives a federal tax benefit in the same transaction.  Weber-Stephen must pay state taxes on the purchase, unless it meets one of the tax exemptions provided in the Code."  
Weber-Stephen
, 324 Ill. App. 3d at 903.

The Department asserts that JI Aviation's argument would not only require us to abandon our holding in 
Weber-Stephen
, but also the long-established case law that applies a literal definition of "sale at retail."  See 
Brevoort Hotel Co. v. Ames
, 360 Ill. 485, 489 (1935) (applied a literal definition of "sale at retail" based upon the fact that title or ownership to food remained with the owner of a restaurant until it was served to a patron); 
O'Brien v. Isaacs
, 32 Ill. 2d 105, 107 (1965) (in examining the applicability of the Retailers' Occupation Tax Act to the sale of flowers to out-of-state customers arranged by an out-of-state florist but effected by an in-state florist, the supreme court rejected the contention that the in-state florist was a bailee or "one who does not really sell any goods"); 
Sprague v. Johnson
, 195 Ill. App. 3d 798, 801 (1990).  In 
Sprague
, the court held that a trucker owed retail occupation taxes for the retail sale of rock where the plaintiff received orders from customers for rock, quoted them a price, loaded the rock onto his truck at the quarry and then delivered the rock to the customers.  Ultimately, it reasoned that plaintiff took title to the rock at the quarry and then transferred title to the customer when he unloaded the rock at the customer's location.  
Sprague
, 195 Ill. App. 3d at 801.  Moreover, the 
Sprague
 court noted that even if the parties had intended title to pass at some other point, those "intentions control only when the parties ‛otherwise explicitly agree' as to when title will pass."  
Sprague
, 195 Ill. App. 3d at 802, citing 
Country Mutual Insurance Co. v. Aetna Life & Casualty Insurance Co.
, 69 Ill. App. 3d 764, 767 (1979).   

In other words, the Department contends, this court cannot ignore the 
form
 of the transaction.  In 
In re Stoecker
, 179 F.3d 546 (7th Cir. 1999), a case cited by both 
Weber-Stephens
 and JI Aviation in the present case, the Department concedes that the United States Court of Appeals for the Seventh Circuit allowed a "substance over form" analysis to disregard the transfer of title from a retailer of aircraft to its own financing affiliate.  
Stoecker
, 179 F.3d at 549-50.  However, the Department notes, the 
Stoecker
 court "specifically rejected what JI Aviation proposes here: to disregard the roles of both the retailer and its financing affiliate and instead treat the entire series of transactions as a single transaction between the original owner of the aircraft and its ultimate purchaser."  As the 
Stoecker
 court stated: "This particular application of the ‛substance over form' doctrine *** is nixed by Illinois law, which expressly treats a transfer of title to a retailer as a sale even if the purpose is merely to grant a security interest."  
Stoecker
, 179 F.3d at 549-50.  Consequently, using an analysis as compact as the 
O'Brien
 court, the 
Stoecker
 court concluded: "JPA took title; JPA is a retailer; therefore use tax was due on the subsequent transfer of title by JPA to Chandler."  
Stoecker
, 179 F.3d at 550.  Here, the Department concludes, "[h]ad the 
Stoecker
 court addressed the current case, it would have undoubtedly reached the same conclusion about Nationsbanc (the equivalent of JPA) and JI Aviation (the equivalent of Chandler)."

Such an analysis, the Department concludes, is consistent with federal law stressing that parties should not be permitted lightly to disregard the particular form of transactions they themselves have chosen.  For example, in 
Commissioner of the Internal Revenue Service v. Danielson
, 378 F.2d 771 (3d Cir. 1967), the court adopted the following rule:

"[A] party can challenge the tax consequences of his agreement as construed by the Commissioner only by adducing proof which in an action between the parties to the agreement would be admissible to alter that construction or to show its unenforceability because of mistake, undue influence, fraud, duress, 
etc
."  
Danielson
, 378 F.2d at 775.

The 
Danielson
 court gave several reasons for its holding: absence of such a rule (1) would allow parties to unilaterally reform contracts resulting in unjust enrichment; (2) would allow a party to nullify the reasonably predictable consequences of the agreement; and (3) might allow the parties to "whipsaw" the Internal Revenue Service (IRS), forcing it to litigate against both a seller and a buyer, with each proposing inconsistent interpretations of their transaction, in order for the IRS to obtain the proper tax due.  
Danielson
, 378 F.2d at 775.  In the present case, JI Aviation argues that if Richland was domiciled in Illinois and wished to obtain the tax benefits of a Code section 1031 like-kind exchange, and the ultimate purchaser was also domiciled in Illinois, the Department would likely be exposed to conflicting interpretations of the same transaction as both Richland and the ultimate purchaser would claim that their transactions occurred directly with Nationsbanc so as to avoid use tax.  This, the Department argues, is exactly what 
Danielson
 intended to avoid.

To the contrary, JI Aviation argues that this case involves a classic application of "substance over form," which is a doctrine that has been universally accepted.  See 
Young v. Hulman
, 39 Ill. 2d 219, 225 (1968); 
In re Stoecker
, 179 F.3d 546 (7th Cir. 1999); 
Comdisco, Inc. v. United States
, 756 F.2d 569 (7th Cir. 1985); 
Estate of Weinert v. Commissioner of the Internal Revenue Service
, 294 F.2d 750 (5th Cir. 1961).  In 
Estate of Weinert
, for example, the United States Court of Appeals for the Fifth Circuit held that the "substance over form" doctrine carried "out perhaps the most basic principle in taxation: economic realities determine tax consequences."  
Estate of Weinert
, 294 F.2d at 752.  Likewise, the court found that "[t]ax law deals in economic realities, not legal abstractions."  
Estate of Weinert
, 294 F.2d at 755.  The court later held:

"Resort to substance is not a right reserved for the Commissioner's exclusive benefit, to use or not to use – depending on the amount of the tax to be realized.  The taxpayer too has a right to assert the priority of substance – at least in a case where his tax reporting and actions show an honest and consistent respect for the substance of a transaction."  
Estate of Weinert
, 294 F.2d at 755.

Because this doctrine requires taxation of a transaction based on economic realities,  JI Aviation argues that its purchase is a nontaxable purchase from a nonretailer, Richland.

Moreover, it claims that the cases that the Department cites for its argument are inapposite.  For example, in 
Brevoort Hotel
, 
O'Brien
, and 
Sprague
, the courts all held, contrary to various taxpayer arguments otherwise, that taxable sales at retail had occurred based on the seller's transfer of title, possession and substantive ownership of tangible personal property.  Put another way, these cases addressed circumstances where both substance 
and
 form supported characterization of the transaction as a taxable retail sale.  As such, JI Aviation notes, these cases do not address the legal issue in this case, where substance (JI Aviation's purchase from Richland) and form (title passes to JI Aviation through Nationsbanc) diverge, whether substance controls JI Aviation's tax responsibility.

With regard to the Department's citation of 
Stoecker
, the 
Stoecker
 court applied the "substance over form" doctrine to ignore the transfer of aircraft title from a nonretailer affiliate of a large retailer of aircraft (JPA) to the purchaser, and instead to treat JPA as the seller.  
Stoecker
, 179 F.3d at 550.  Moreover, in response to the taxpayer's argument that JPA was also a conduit, the 
Stoecker
 court stated that  "JPA took title; JPA is a retailer; therefore use tax was due on the subsequent transfer of title by JPA to Chandler."  
Stoecker
, 179 F.3d at 550.  However, that holding was based on facts that clearly supported the determination that JPA was the substantive seller.  JPA and its nonretailer affiliate held title to the aircraft for three months while it was under lease from JPA's affiliate to the purchaser.  Accordingly, JPA had a real economic interest during the three-month period that it and its affiliate held title.  Here, by contrast, it appears that Nationsbanc acted as a pure conduit, without economic interest in the aircraft, holding title for one minute prior to conveying title to JI Aviation. 

In addition, 
Danielson
 is easily distinguishable because this is not a "whipsaw" case.  Here, the Department could not face conflicting tax claims by Richland and JI Aviation for mutually exclusive tax benefits.  JI Aviation treated the transaction as a nontaxable occasional sale, and Richland did not take a conflicting position.  Accordingly, unlike 
Danielson
, where the seller and purchaser sought mutually exclusive federal income tax benefits based on a contract dispute, there was no possibility that it and Richland would take conflicting positions in Illinois where both parties consistently treated this as a nontaxable occasional sale.  We think this akin to the situation discussed by the United States Court of Appeals for the Seventh Circuit in 
Comdisco
, 756 F.2d 569 (7th Cir. 1985), where the court held that it would not bind a taxpayer to the form of its transaction in a non-"whipsaw" situation.  Specifically, the court stated:

"We see no reason to extend the Government's power to hold a taxpayer to the technical form of its transactions to situations in which the Government will never face conflicting claims.  Therefore, in this case, we abandon the approach that binds a taxpayer to the labels given to a transaction in favor of an analysis that looks at the economic substance of the transaction."  
Comdisco
, 756 F.2d at 569.

Most important, however, is JI Aviation's cite to 
Weber-Stephen
 for our previous determination that a third-party intermediary (Smith/Ellis in a Code section 1031 like-kind exchange) 
can
 be ignored as a conduit.  In that case, when looking at two third-party intermediaries, JB&A and Smith/Ellis, the 
Weber-Stephen
 court had to ascertain their specific obligations to what was alleged to be the substantive seller, Chase, and the alleged substantive buyer, Weber-Stephen.  In so doing, we think that 
Weber-Stephen
 set forth clear guidelines that apply the "substance over form" doctrine to determine how to treat differently situated third-party intermediaries in a Code section 1031 like-kind exchange.  Those guidelines were as follows.

1. Written Agreements Define Limited Role of Conduit

First, the 
Weber-Stephen
 court looked at the written agreements to discern the roles of Smith/Ellis, the alleged agent of Chase, and JB&A, the alleged agent of Weber-Stephen.  It found that the written agreement Smith/Ellis entered defined its limited role as an agent in facilitating a Code section 1031 like-kind exchange for Chase.  
Weber-Stephen
, 324 Ill. App. 3d at 901.  However, the court found that "neither the exchange agreement nor the escrow agreement [between JB&A and Weber-Stephen] refers to Chase or Smith/Ellis or contains any language that JB&A was acting as an intermediary or agent for Weber-Stephen in the purchase of the Hawker."   
Weber-Stephen
, 324 Ill. App. 3d at 901.  Accordingly, the court determined that JB&A was the substantive seller to Weber-Stephen. 

In the present case, Nationsbanc's limited role as a conduit in facilitating the like-kind exchange was also clearly defined in the written agreements in evidence in this case.  While it is true that the aircraft bill of sale between Richland and Nationsbanc lists Richland as the "seller" and Nationsbanc as the "purchaser" without any reference to an "agency" relationship, and the warranty bill of sale between Nationsbanc and JI Aviation lists JI Aviation as the "purchaser" and Nationsbanc as the "seller," we find that to focus exclusively on these words would be to ignore equally powerful provisions in the agreements which indicate Nationsbanc's role as a conduit.  For example, in the agreement between Richland and Nationsbanc, Nationsbanc was, at all times, contractually obligated to transfer legal title to JI Aviation.  Because such an obligation effectively prevented Nationsbanc from utilizing or disposing of the aircraft as it wished, 
i.e.
, acting like a true "purchaser" or "seller," we think it impossible to view Nationsbanc as anything 
but
 an intermediary.  Indeed, in the facts to which both parties stipulated in this case, it was agreed that the sole reason that title was to be transferred through Nationsbanc was to effectuate a section 1031 like-kind exchange.

2. Conduit Immediately Reconveys Title

Second, the 
Weber-Stephen
 court then looked to what Smith/Ellis and JB&A did with the title once they received it.  There, Smith/Ellis, Chase's alleged agent, was contractually required, upon receipt from Chase, immediately to reconvey the title to the substantive purchaser.  
Weber-Stephen
, 324 Ill. App. 3d at 901.  However, the court found that "[t]he JB&A–Weber-Stephen agreement contains no such provisions."  
Weber-Stephen
, 324 Ill. App. 3d at 901.  The court also noted JB&A inventoried the plane it received from Weber-Stephen and "could sell it for a potentially substantial profit."  
Weber-Stephen
, 324 Ill. App. 3d at 902.  

In the present case, Nationsbanc was also contractually required, upon receipt from Richland, immediately to reconvey title to the substantive purchaser, and it did reconvey title to JI Aviation within one minute of receiving it from Richland.

3. Conduit Assumes No Liability for Good Title

Third, the 
Weber-Stephen
 court looked to whether Smith/Ellis, alleged agent for Chase, and JB&A, alleged agent for Weber-Stephen, assumed any liability for the transaction.  There, the court found that Smith/Ellis "did not undertake any warranties of title," but that JB&A did.  
Weber-Stephen
, 324 Ill. App. 3d at 901.  "[JB&A] warranted to Weber-Stephen that, at the time of the closing, JB&A would be the lawful owner of the Hawker and the airplane would be free and clear of any and all liens, encumbrances, security interests, and claims.  JB&A therefore exposed itself to potentially substantial liability for any title problems with the Hawker."  
Weber-Stephen
, 324 Ill. App. 3d at 901.

Here, Nationsbanc had no liability for title warranties because it was completely indemnified by Richland for the title it received from and immediately reconveyed on behalf of Richland.

4. Conduit Reconveys Purchase Price

Fourth, the 
Weber-Stephen
 court looked to what Smith/Ellis and JB&A did with the purchase price once they received it.  The court found that Smith/Ellis had no control over the purchase price it received and that Smith/Ellis was contractually required to apply only toward the purchase of an aircraft for Chase.  
Weber-Stephen
, 324 Ill. App. 3d at 901.  Conversely, it found that there was no similar restriction on JB&A's use of those funds.  
Weber-Stephen
, 324 Ill. App. 3d at 901. 

Here, Nationsbanc was also contractually required to reconvey the purchase price it received from JI Aviation and to apply it only toward the acquisition of Richland's Gulfstream G-IV.

5. Conduit Retains No Portion of Purchase Price

Fifth, the 
Weber-Stephen
 court looked to whether Smith/Ellis and JB&A were able to retain any portion of the purchase price they received.  The court found that Smith/Ellis was contractually precluded from keeping any portion of the purchase price, whereas the JB&A agreement with Weber-Stephen contained no such provisions.  
Weber-Stephen
, 324 Ill. App. 3d at 901.  

Here, Nationsbanc was also contractually precluded from keeping any portion of the purchase price.

6. Conduit Does Not Pay Closing Costs

Lastly, the 
Weber-Stephen
 court looked to whether Smith/Ellis and JB&A paid any closing costs in the transaction.  The court found that Smith/Ellis did not pay any of the closing costs on the Hawker aircraft but, instead, closing costs were paid one-half by Chase, the substantive seller, and one-half by JB&A, the substantive purchaser from Chase.  
Weber-Stephen
, 324 Ill. App. 3d at 901.  

Here, Nationsbanc did not pay any closing costs but, instead, closing costs were paid one-half by Richland and one-half by JI Aviation

At first blush, it could appear that our decision in 
Weber-Stephen
 might betoken a finding against JI Aviation because of parallels between JB&A and Nationsbanc.  However, the 
Weber-Stephen
 court also made a particularized conclusion as to Smith/Ellis's role in the transaction as an agent of Chase.  We find the 
Weber-Stephen
 court's determination of the relationship between Smith/Ellis and Chase to be very persuasive and relevant, even if it was not the express holding in that case.  Admittedly, as the Department points out, the 
Weber-Stephen
 court's conclusion as to Smith/Ellis was 
dicta
, as that conclusion did not determine whether the transaction between Weber-Stephen and JB&A was a sale at retail.  However, as noted in 
Ko v. Eljer Industries, Inc.
, 287 Ill. App. 3d 35 (1997):

" ‛[A]n expression of opinion upon a point in a case argued by counsel and deliberately passed upon by the court, though not essential to the disposition of the cause, if 
dictum
, is a judicial 
dictum
. [Citations.]  And further, a judicial 
dictum
 is entitled to much weight, and should be followed unless found to be erroneous.  [Citations.]'  
Cates v. Cates
, 156 Ill. 2d 76, 80, 619 N.E.2d 715, 717 (1993)."  
Eljer
, 287 Ill. App. 3d at 41.

As neither party objects to the analysis in which the 
Weber-Stephen
 court engaged, and we also find it to be sound, we choose to follow it.

Accordingly, we uphold the trial court's decision to reverse the Department's conclusion that the sale of the aircraft was not an occasional sale and, therefore, subject to use tax.  Despite the significant deference with which this court is to review the Department's decision, we, like the supreme court in 
City of Belvidere
, cannot blindly defer to the Department's decision.

Because we hold for JI Aviation on the substantive issue, we need not address whether the Department erred in refusing to abate a penalty for late filing.

Affirmed. 

THEIS, P.J., and KARNEZIS, J., concur.

FOOTNOTES
1:  Ordinarily, the sale of an asset that results in a gain or loss must be recognized in the year the property is sold or exchanged.  I.R.C. §1001 (1989).  Code section 1031, however, allows a taxpayer to defer the recognition of gain or loss on this property and provides:  "No gain or loss shall be recognized on the exchange of property held for productive use in a trade or business or for investment if such property is exchanged solely for property of like kind which is to be held either for productive use in a trade or business or for investment."  I.R.C. §1031(a)(1) (1989).

2: 
On a side note, we point out that our analysis follows that suggested by the court in 
Blessing/White
.  Nonetheless, it may very well be that the 
Blessing/White
 court's determination "that a mixed question of fact and law is [not] always presented whenever a case involves ‛an examination of the legal effect of a given set of facts' " (
Blessing/White
, 329 Ill. App. 3d at 728, quoting 
City of Belvidere
, 181 Ill. 2d at 205), conflicts with the supreme court's determination in 
AFM Messenger
 that "a mixed question is one ‛in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or *** whether the rule of law as applied to the established facts is or is not violated.' [Citations.]" 
AFM Messenger
, 198 Ill. 2d at 391.  However, in light of the fact that the present facts suggest a mixed question of law and fact under both 
Blessing/White
 and 
AFM Messenger
, we need not decide whether those decisions conflict.