**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 11 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WELLS FARGO BANK NEW MEXICO,
N.A., Personal Representative of the
Estate of Mary Kate Nielsen, Deceased,

Plaintiff - Appellee,

v.

UNITED STATES OF AMERICA

Defendant - Appellant.

No. 01-2212

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No.  CIV-99-1298 MV/DJS)**

---

John A. Nolet, Attorney, Department of Justice (David C. Iglesias, United States
Attorney, State of New Mexico; Eileen J. O'Connor, Assistant Attorney General;
Kenneth L. Greene, Attorney, Department of Justice with him on the briefs), Washington,
D.C., for Defendant - Appellant.

Timothy L. Garcia of Garcia Law Firm, Santa Fe, New Mexico (Steven L. Tucker of
Tucker Law Firm, Santa Fe, New Mexico with him on the brief) for Plaintiff - Appellee.

---

Before **HENRY**, **PORFILIO** and **BRISCOE**, Circuit Judges.

---

**PORFILIO**, Senior Circuit Judge.

---

This is an appeal from a ruling of the United States District Court for the District of New Mexico granting summary judgment to the personal representative of a decedent (the Estate). That judgment requires the Internal Revenue Service to refund taxes paid by the Estate as a consequence of the disallowance by the Commissioner of a gift tax deduction. The district court held the event giving impetus to the tax was an incomplete transfer under New Mexico law; thus, no gift took place, and the Estate owes no federal gift tax. The government has appealed, contending the district court erred by judging the federal taxability of the event under state rather than federal law. We agree and reverse.

The issue is predicated upon a provision of the Internal Revenue Code which allows, as a marital deduction, a gift tax exemption of transfers of certain life estates to donee spouses. For the exemption to apply, the donor must create a Qualified Terminable Interest Property (QTIP) trust. Essential to the effective creation of such a trust is an election that must be made on or before the date upon which a gift tax return must be filed. In this case, however, it is uncontested that election was not timely made.

The failure of notice notwithstanding, the Estate seeks to avoid the consequences of the disallowance of the marital deduction by asserting no gift was effectively made under state law, and, therefore, no gift tax can be assessed. In giving substance to this theory, the district court erred by failing to recognize the significance of the fact that by creating an irrevocable life interest on behalf of her spouse, the donor/grantor completely parted with dominion over the transferred funds. Moreover, under federal law that

relinquishment made the event taxable. To put this issue in context, we must first briefly review the applicable portions of the Internal Revenue Code.

In general terms, transfers between spouses qualify for a marital deduction and thus are exempt from gift or estate tax. 26 U.S.C. §§ 2523(a), 2056(a). However, if the transfer is in the form of a life estate or other terminable interest, the marital deduction is generally not allowed. 26 U.S.C. §§ 2523(b), 2056(b). These provisions notwithstanding, a further exception is allowed under the gift tax for qualified terminable interest property. 26 U.S.C. § 2523(f)(1). That interest is defined in § 2523(f)(1) as one "in which the donee spouse has a qualifying income interest for life, and to which an election under this subsection applies." That election must be made "on or before the date prescribed by section 6075(b) [generally April 15 of the year following the transfer unless the period is properly extended] for filing a gift tax return with respect to the transfer." 26 U.S.C. § 2523(f)(4)(A). By regulation authorized under that provision, the election must be made on a timely filed gift tax return. Treas. Reg. § 25.2523(f)-1(b)(4)(i). It is not contested in this case that the election was not made in a timely filed gift tax return.

It is also uncontested that Mary Kate Nielsen, the decedent, created a number of successive instruments which ultimately resulted in the tax assessed in this case. The details of those successive instruments are not particularly helpful and indeed serve more

to make complicated what is essentially a simple case. We do need, however, to consider certain provisions of those instruments.

A third amendment to a revocable trust which attempted to create a valid QTIP trust was made some nine years after the trust was initially created. The amendment directed the trustee to "allocate to the Q.T.I.P. TRUST [for the benefit of husband, John Nielsen] Six Hundred Thousand Dollars [it being] the Grantor's intention that this gift obtain for her estate a marital deduction or other generally similar benefit, if any, which may be available under the federal estate tax law applicable to the Grantor's estate." By the terms of the instrument, John Nielsen was to be paid the income from the trust during his life, and upon his death, the corpus was to pass to Ms. Nielsen's children of a prior marriage.

Five years later, a fourth amendment was made. It provided:

> The Grantor declares that simultaneously with execution of this amendment, she has also executed the Mary Kate Nielsen Lifetime QTIP Trust, which is an irrevocable QTIP trust for the benefit of her spouse John T. Nielson. The Grantor therefore does hereby revoke the provisions [of the prior amendment] which created a QTIP trust for the benefit of the Grantor's husband John T. Nielson [including the creation of the testamentary QTIP trust and the provision directing distribution of the corpus upon John Nielson's death]"

The amendment further provided Ms. Nielsen's intent was to "condition" the QTIP trust created in this instrument "upon and subject to the execution, completion and funding of the Mary Kate Nielsen Lifetime QTIP trust" concurrently executed.

Furthermore, the instrument provided, if the latter trust was not "executed, completed or funded at the time of the Grantor's death, then the provisions hereof pertaining to the creation of the QTIP Trust . . . shall be revived. . . ."

On the same date, Ms. Nielsen created the Mary Kate Nielsen Lifetime QTIP trust as an irrevocable inter vivos trust. Under the terms of that trust, Mr. Nielsen received a lifetime interest in the trust income. Upon his death, the corpus was to the distributed to Ms. Nielsen's children. The terms of the trust make plain Ms. Nielsen's intent to make this trust a qualified QTIP. The instrument also provided Ms. Nielsen:

> shall have no right or power . . . to alter, amend, revoke, or terminate the trust . . . to alter the designation of the persons who shall possess or enjoy the trust property or the income therefrom. . . . Grantor intends to, and *does hereby, relinquish absolutely and forever all possession or enjoyment of, or right to the trust property, or the income therefrom,* whether directly, indirectly, or constructively, and any interest of any nature, future or present, vested or contingent, in the trust property.

(emphasis added). Concurrently with the execution of this instrument, Ms. Nielsen made a transfer of $550,000 to the trust.

At this point, two propositions emerge. First, the language employed in the trust instrument concerning the finality of the transfer of funds could not be any clearer. Indeed, the architect of the trust employed virtually every word in a legal scrivner's lexicon to denote the complete abandonment by Ms. Nielsen of any interest in the transferred property. Second, had the election required by § 2325(f)(1) been made, Ms. Nielsen's intent to create a QTIP would have been achieved, and no gift tax would have

attached to the transfer of the $550,000. Unfortunately for Ms. Nielsen, for the want of an election, the exemption was lost.

In an attempt to recover from this loss, the Estate paid the tax and filed this refund action in the district court, contending under New Mexico law, the transfer of funds to the lifetime QTIP trust was incomplete because Ms. Nielsen's donative intent was foiled. The district court granted the Estate's motion for summary judgment predicated upon its reading of **Estate of Davenport v. Commissioner,** 184 F.3d 1176 (10th Cir. 1999). The court relied upon our holding "in federal taxation cases, state law controls only to the extent that certain statutory provisions of the federal revenue laws make their application dependent on state law." **Id.** at 1176. The district court believed **Davenport** mandated application of state law to determine the nature of the ownership interest before applying federal law to decide the taxability of that property. Finding donative intent, a required element of a completed gift under New Mexico law, was absent here, the court concluded the Commissioner wrongfully assessed a gift tax against the Estate. We disagree with this analysis.

We believe the point at which the district court's reasoning strayed from the proper path was in not recognizing the settled principle that *for federal tax purposes*, the essence of a completed transfer is determined by whether there was a "passage of dominion and control over the economic benefits of property." **Estate of Sanford v. Commissioner**, 308 U.S. 39, 43 (1939). There is nothing within the applicable parts of

the Internal Revenue Code that even suggests state law overrides this rule of federal law. The notion is buttressed by Treasury Regulation § 25.2511-1(g)(1) which states:

> Donative intent on the part of the transferor is not an essential element in the application of the gift tax to the transfer. The application of the tax is based on the objective facts of the transfer and the circumstances under which it is made, rather than on the subjective motives of the donor.

*See also* Tres. Reg. § 25.2511-2(b) (a gift is complete *for federal tax* purposes when "the donor has so parted with dominion and control as to leave in him no power to change its disposition.").

Under the previously described language of the trust instrument, can it be any plainer that Ms. Nielsen intended to give up dominion and control of the trust property? We think not. The verbiage of the meticulous legal scrivner drove that point home.

Though this analysis is sufficient for the proper disposition of the case, the obviously sincere efforts thoughtfully expended by the district court require further comment. We do not believe that *Davenport* points to the conclusion the district court reached. First, in that case, we looked to state law merely to determine whether the donor had an ownership interest in property she attempted to transfer to the donee. This search did not implicate a determination of whether the transfer was complete for federal tax purposes. Second, we did not hold that, for federal gift tax purposes, all essential state law elements of a valid gift must be satisfied. Indeed, whether a transfer is complete for federal tax purposes is strictly a matter of federal law.

More importantly, the Supreme Court has made plain that the "elusive state of mind" involved in the formation of donative intent has been eradicated from the tax code by Congress. *Commissioner v. Wemyss*, 324 U.S. 303, 306 (1945). The Court has substituted the search for donative intent with the "much more workable external test, that where property is transferred for less than an adequate and full consideration in money or money's worth, the excess in such money value shall for purposes of the tax . . . be deemed a gift." *Id.* (internal quotes omitted) We conclude while a donor's intent to make a gift may be a helpful factor in the ultimate determination of whether a gift has been made, for federal tax purposes, that determination in no way turns upon the absence of evidence of such an intent.

The judgment of the district court is **REVERSED** and **REMANDED WITH INSTRUCTIONS** to enter judgment for the United States.