# Illinois Official Reports

## Appellate Court

---

### *Shakman v. Department of Revenue*, 2019 IL App (1st) 182197

---

| | |
|---|---|
| Appellate Court Caption | MICHAEL L. SHAKMAN, Individually and as Trustee of the Michael L. Shakman Revocable Trust, Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE and MICHAEL FRERICHS, in His Official Capacity as Treasurer of the State of Illinois, Defendants-Appellees. |
| District & No. | First District, Fourth Division<br>No. 1-18-2197 |
| Filed | December 12, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-L-50106; the Hon. James M. McGing, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael L. Shakman and Diane F. Klotnia, of Miller Shakman & Beem LLP, of Chicago, for appellant.<br><br>Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Carl J. Elitz, Assistant Attorney General, of counsel), for appellees. |

JUSTICE BURKE delivered the judgment of the court, with opinion. Presiding Justice Gordon and Justice Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal concerns Illinois's Aircraft Use Tax Law (35 ILCS 157/10-1 *et seq.* (West 2018)), which imposes a 6.25% tax "on the privilege of using" an aircraft in Illinois "acquired by gift, transfer, or purchase" unless certain statutory exemptions apply.

¶ 2    In 2008, Michael L. Shakman bought an aircraft and paid a corresponding general use tax. Several years later, using a bill of sale, he changed the legal ownership of that aircraft to himself as trustee of his revocable trust and filed the bill of sale with the Federal Aviation Administration (FAA). Shakman, however, did not pay a use tax. The Department of Revenue (Department) monitors FAA's records, noticed the change in legal ownership, and sent Shakman a notice of tax liability under the Aircraft Use Tax Law. Shakman paid the tax under protest and sued the Department and Michael Frerichs, as Treasurer of the State of Illinois, for a declaratory judgment that the second use tax was improper. On the parties' cross-motions for summary judgment, the circuit court found that the Department properly imposed the tax pursuant to the Aircraft Use Tax Law. The court accordingly granted the Department and Frerichs's motion for summary judgment and denied Shakman's motion.

¶ 3    The sole issue on appeal is whether the Department properly imposed the tax pursuant to the Aircraft Use Tax Law after Shakman changed the legal ownership of the aircraft from himself individually to himself as trustee of his revocable trust. Because we find Shakman's change of ownership is a taxable event under the broad language of the Aircraft Use Tax Law and he has not contended any of the statutory exemptions apply, we affirm the judgments of the circuit court.

¶ 4                                        I. BACKGROUND

¶ 5    In 1990, Shakman created the Michael L. Shakman Revocable Trust. In 2007, Shakman amended and restated the trust in its entirety. In the restatement, in addition to being the trust's settlor, he named himself trustee and was the beneficiary during his lifetime. Upon his death, however, his trust property would pass to a marital trust benefitting his wife and a bypass trust benefitting his children. Additionally, Shakman's trust expressly provided him the power to revoke or amend the instrument at any time.

¶ 6    In 2008, Shakman individually purchased a Schleicher glider aircraft. Afterward, he registered the aircraft with the Department of Transportation and filed a general use tax return with the Department for $7370.

¶ 7    In 2014, as part of Shakman's estate planning, he sought to change ownership of the aircraft from himself individually to himself as trustee of his trust. To do so, he completed an aircraft bill of sale using a preprinted form from the FAA. According to the bill of sale, Shakman individually did "hereby sell, grant, transfer and deliver all rights, title and interests in and to such aircraft unto" himself "as trustee of Michael L. Shakman Revocable Trust *** for and in consideration of $1 + OVC," with OVC apparently meaning other valuable consideration.

Shakman subsequently filed the bill of sale with the FAA. According to a declaration that Shakman filed in conjunction with the eventual litigation in this case, after the change in legal ownership, he personally paid all costs associated with the maintenance and operation of the aircraft just as he did before the change of ownership.

¶ 8    At some point after filing the bill of sale with the FAA, the Department, which monitors aircraft title records of the FAA, noticed the change of ownership to Shakman's aircraft. Because the Department believed that the change was a taxable event under the Aircraft Use Tax Law, it sent Shakman's trust a notice of tax liability of $7511.01, a figure that included the aircraft use tax as well as a penalty for the nonpayment and interest. Shakman, on behalf of his trust, paid the Department $7511.63 under protest, a number slightly higher because Shakman believed the Department made an error in calculating the interest.

¶ 9    In March 2018, Shakman, individually and as trustee of his trust, filed a two-count complaint against the Department and Frerichs (collectively, defendants). In count I, Shakman sought a declaration that the Department's imposition of an aircraft use tax was improper and a declaration to have the Department refund him the amount he paid under protest with interest. In count II, Shakman sought a preliminary and permanent injunction barring the Department from transferring the amount he paid under protest from a protest fund. Shakman also separately filed a motion for a preliminary injunction. Later that month, the circuit court granted Shakman's motion for a preliminary injunction and ordered that defendants maintain the amount Shakman paid under protest in a protest fund pending resolution of the litigation.

¶ 10    After defendants answered Shakman's complaint, the parties filed cross-motions for summary judgment. Ultimately, the circuit court concluded that whenever an aircraft owner in Illinois filed a bill of sale with the FAA, the owner would incur a tax under the Aircraft Use Tax Law unless a statutory exemption applied. According to the court, the bright-line rule was consistent with the language of the Aircraft Use Tax Law and would lead to predictability in taxation. Based on the rule, the court found that the Department's imposition of an aircraft use tax for Shakman changing the legal ownership of his aircraft was proper despite him being taxed a second time for the use of the aircraft simply as a result of routine estate planning. The court accordingly granted defendants' motion for summary judgment and denied Shakman's motion.

¶ 11    Shakman timely appealed.

¶ 12                                II. ANALYSIS

¶ 13    Shakman contends that the circuit court erred in finding that his change of ownership of his aircraft from himself individually to himself as trustee of his revocable trust was a taxable event under the Aircraft Use Tax Law. Shakman therefore argues that the court erred in resolving the parties' cross-motions for summary judgment.

¶ 14                              A. Legal Principles

¶ 15    By the parties' filing of cross-motions for summary judgment, they agree that there is only a question of law involved and invite the court to resolve the litigation based solely upon the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. The circuit court should only grant summary judgment where the pleadings, depositions, admissions, and affidavits on file, when viewed in

the light most favorable to the nonmoving party, demonstrate that there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. *Id.* ¶ 29.

¶ 16    Whether the circuit court properly resolved the parties' cross-motions for summary judgment turns on an issue of statutory construction. When interpreting a statute, our primary objective is to determine and effectuate the intent of our legislature, "the surest and most reliable indicator of which is the statutory language itself, given its plain and ordinary meaning." *Board of Education of Springfield School District No. 186 v. Attorney General*, 2017 IL 120343, ¶ 24. When construing statutes related "to the collection of taxes, the policy of this court has been to give them a common sense meaning so as to avoid making collection difficult or impossible." *Department of Revenue v. Joseph Bublick & Sons, Inc.*, 68 Ill. 2d 568, 575 (1977). But also "[a] tax statute must be strictly construed against the government and in favor of the taxpayer." *Kankakee County Board of Review v. Property Tax Appeal Board*, 226 Ill. 2d 36, 52 (2007). If the statutory language is unambiguous, we must apply the statute as written without resorting to external aids of statutory construction. *Board of Education of Springfield*, 2017 IL 120343, ¶ 24. If, however, the statutory language is ambiguous, we may utilize extrinsic aids of statutory construction to determine the intent of our legislature. *Id.* ¶ 25.

¶ 17    We review the circuit court's ruling on cross-motions for summary judgment *de novo*. *Pielet*, 2012 IL 112064, ¶ 30. Similarly, when tasked with interpreting and construing the meaning of a statute, we do so *de novo*. *Id.* As this case involves the intersection of tax law and trusts law, we must provide some initial background about both in order to provide the necessary context for the parties' arguments. We begin by discussing Illinois's sales tax system.

¶ 18                    B. Illinois's Sales Tax System

¶ 19    First, we must discuss two different, but interrelated, taxation schemes in Illinois. Illinois has enacted the Retailers' Occupation Tax Act (ROTA) (35 ILCS 120/1 *et seq.* (West 2018)), which authorizes the imposition of a retailers' occupation tax. *City of Chicago v. City of Kankakee*, 2019 IL 122878, ¶ 3. This tax is imposed on the sale of tangible personal property purchased in Illinois (*id.*), the selling of which must be done by "persons engaged in the business of selling at retail tangible personal property" (35 ILCS 120/2 (West 2018)). Additionally, Illinois has enacted the Use Tax Act (35 ILCS 105/1 *et seq.* (West 2018)). A use tax is imposed on the privilege of using tangible personal property in Illinois (*City of Chicago*, 2019 IL 122878, ¶ 3) that was "purchased at retail from a retailer" (35 ILCS 105/3 (West 2018)).

¶ 20    In other words, both ROTA and the Use Tax Act concern the sale of tangible personal property by retailers. See *People ex rel. Lindblom v. Sears Brands, LLC*, 2019 IL App (1st) 180588, ¶ 6. Both statutes provide exemptions from taxation for the sale of tangible personal property sold by nonretailers. See 35 ILCS 105/2 (West 2018) (under the Use Tax Act, "[t]he isolated or occasional sale of tangible personal property at retail by a person who does not hold himself out as being engaged (or who does not habitually engage) in selling such tangible personal property at retail *** does not make such person a retailer hereunder"); 35 ILCS 120/1 (West 2018) (under ROTA, "[t]he isolated or occasional sale of tangible personal property at retail by a person who does not hold himself out as being engaged (or who does not habitually engage) in selling such tangible personal property at retail *** does not constitute engaging in a business of selling such tangible personal property at retail within the meaning of this Act").

In other words, "[a] nonretailer who makes an occasional or isolated sale does not incur ROTA liability and therefore the purchaser-user does not incur [Use Tax Act] taxes." *Weber-Stephen Products, Inc. v. Department of Revenue*, 324 Ill. App. 3d 893, 899 (2001).

¶ 21                                    C. The Aircraft Use Tax Law

¶ 22      We now turn to the Aircraft Use Tax Law, which became effective on June 20, 2003. See Pub. Act 93-24 (eff. June 20, 2003) (adding 35 ILCS 157/10-1 *et seq.*). The Aircraft Use Tax Law imposes a 6.25% tax "on the privilege of using, in [Illinois], any aircraft as defined in Section 3 of the Illinois Aeronautics Act acquired by gift, transfer, or purchase after June 30, 2003." 35 ILCS 157/10-15 (West 2018).[1] Although an aircraft may have been "acquired by gift, transfer, or purchase," the law provides four exemptions to taxation:

> "(i) if the use of the aircraft is otherwise taxed under the Use Tax Act; (ii) if the aircraft is bought and used by a governmental agency or a society, association, foundation, or institution organized and operated exclusively for charitable, religious, or educational purposes; (iii) if the use of the aircraft is not subject to the Use Tax Act by reason of subsection (a), (b), (c), (d), or (e) of Section 3-55 of that Act dealing with the prevention of actual or likely multistate taxation; or (iv) if the transfer is a gift to a beneficiary in the administration of an estate and the beneficiary is a surviving spouse." *Id.*

When the acquisition of an aircraft occurs through a gift or transfer, the amount of tax imposed is based on the fair market value of the aircraft. *Id.* When the acquisition of an aircraft occurs through a purchase, the amount of tax imposed is based on the greater of the selling price or fair market value of the aircraft. *Id.*

¶ 23      Because the Aircraft Use Tax Law applies only if the privilege of using an aircraft has not already been taxed once under the Use Tax Act and an aircraft would have been taxed under the Use Tax Act if purchased from a retailer of aircrafts (see 35 ILCS 105/3 (West 2018); 35 ILCS 157/10-15 (West 2018)), the Aircraft Use Tax Law was intended to apply to nonretail purchases of aircrafts in addition to gifts and transfers (see 86 Ill. Adm. Code 152.101(a) (eff. Feb. 13, 2003)). And thus, prior to June 20, 2003—the effective date of the Aircraft Use Tax Law—the sale of an aircraft by an isolated or occasional seller was not taxed.

¶ 24                                          D. Trusts Law

¶ 25      With a better understanding of the relevant tax laws, we now briefly discuss some aspects of trusts law. "[A] trust is an abstraction—a legal creation designed to enable natural persons who own property to achieve results that could not be achieved if they continued to own it as natural persons." *Hanley v. Kusper*, 61 Ill. 2d 452, 461 (1975); see also *Sullivan v. Kodsi*, 359 Ill. App. 3d 1005, 1010 (2005) ("A written trust possesses a distinct legal existence that is recognized by statute ***."). When a trust is "not qualified by the word 'charitable,' 'resulting' or 'constructive,' " it "is a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it." Restatement (Second) of Trusts § 2 (1959); see *A.B.A.T.E. of Illinois, Inc. v. Quinn*, 2011

---

[1]Shakman does not dispute that his Schleicher glider is an aircraft as defined by section 3 of the Illinois Aeronautics Act (620 ILCS 5/3 (West 2018)).

IL 110611, ¶ 30 (citing Restatement (Second) of Trusts § 1 cmt. c; § 2 cmt. j; § 330 (1959) (basic trusts law)).

¶ 26 Once a trust is created and property transferred into the trust, the trustee holds legal title of the trust property while the beneficiary holds the equitable title. *Culicchia v. Hupfauer*, 379 Ill. App. 3d 562, 565 (2008). But while the trustee and beneficiary may hold legal and equitable title of the property, respectively, "[n]either a trustee nor a beneficiary owns property as a natural person does." *Hanley*, 61 Ill. 2d at 461. That is to say, the trustee's holding of legal title to the property and his actions with respect to that property "are determined by the instrument which creates the trust." *Stuart v. Continental Illinois National Bank & Trust Co. of Chicago*, 68 Ill. 2d 502, 523 (1977). The trustee must manage the trust and its property in accordance with the terms of the trust. *Kagan v. Waldheim Cemetery Co.*, 2016 IL App (1st) 131274, ¶ 31. Thus, the trustee's role with respect to the trust makes his position unique from that of a natural person, whose actions are not restrained by a trust instrument. See *Farkas v. Williams*, 5 Ill. 2d 417, 422 (1955) (finding that "[i]mmediately" upon the creation of an *inter vivos* revocable trust, the settlor cannot "deal with the" property "as if he owned the property absolutely, but only in accordance with the terms of the instrument"); *First National Bank of Joliet v. Hampson*, 88 Ill. App. 3d 1057, 1061 (1980) (stating that, "while it is true that the trustee and the settlor in this case are the same person ***, the powers transferred to the trustee are held in a fiduciary relationship" and "[t]hese broad powers in the trustee cannot be attributed to the settlor even though they are one and the same person").

¶ 27 Lastly, as the name implies, a revocable trust may be revoked at the pleasure of the settlor. 19 Robert S. Hunter, Illinois Practice, Estate Planning and Administration § 212:10 (4th ed. 2007). However, the power of revocation must generally be expressly provided for in the trust document. *A.B.A.T.E.*, 2011 IL 110611, ¶ 30. Similarly, the settlor of a revocable trust has the power to modify the trust consistent with the trust's language. *Dallinger v. Abel*, 199 Ill. App. 3d 1057, 1059 (1990). Thus, the settlor can change the ownership or use of the property in the trust.

¶ 28                                    E. The Instant Case

¶ 29 Moving on to the merits of the instant case, where the operative language of the Aircraft Use Tax Law states that a 6.25% tax will be "imposed on the privilege of using, in [Illinois], any aircraft *** acquired by gift, transfer, or purchase." 35 ILCS 157/10-15 (West 2018). The circuit court found that this case centers on the term "transfer," and defendants only argue that Shakman as trustee acquired the privilege of using the aircraft by transfer. We agree, and thus, this case turns on the construction of "the privilege of using *** any aircraft *** acquired by *** transfer" (*id.*) and whether Shakman's change of ownership from himself individually to himself as trustee of his revocable trust was a taxable event based on this language. Because when construing a statute, our primary goal is to give effect to the intent of our legislature and the best indicator of that intent is the language of the statute itself (*Board of Education*, 2017 IL 120343, ¶ 24), we must define the operative words of this critical phrase, first by using any definitions in the statute itself (*Carroll v. Paddock*, 199 Ill. 2d 16, 25 (2002)).

¶ 30 In examining the Aircraft Use Tax Law, although there is a section titled "Definition," the only word defined is "Department," which means the Department of Revenue. 35 ILCS 157/10-10 (West 2018). However, section 35 states that:

- 6 -

"In the administration of, and compliance with, this Law, the Department and persons who are subject to this Law shall *** be subject to the same *** definitions of terms *** as are prescribed in the Use Tax Act, as now or hereafter amended (except for the provisions of Section 3-70), which are not inconsistent with this Law, as fully as if the provisions of the Use Tax Act were set forth in this Law." *Id.* § 10-35.

Although a court should be careful when importing definitions from one statute into another (see *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 22), the legislature has expressly imported the definitions of the Use Tax Act into the Aircraft Use Tax Law. We therefore utilize the Use Tax Act's definitions to determine the meaning of "the privilege of using *** any aircraft *** acquired by *** transfer." 35 ILCS 157/10-15 (West 2018).

¶ 31 Under the Use Tax Act, "use" is defined as "the exercise by any person of any right or power over tangible personal property incident to the ownership of that property." 35 ILCS 105/2 (West 2018). "Person," in turn, is defined as "any *natural individual*, firm, partnership, association, joint stock company, joint adventure, public or private corporation, limited liability company, or a receiver, executor, *trustee*, guardian or other representative appointed by order of any court." (Emphases added.) *Id.* The words "acquire" and "transfer," or a variation of them, are not defined in the Use Tax Act. See *id.*

¶ 32 When words are undefined by a statute, we must give them their "ordinary and popularly understood meaning." *Carroll*, 199 Ill. 2d at 25. In doing so, our supreme court has consistently looked to Black's Law Dictionary. See *People v. Relwani*, 2019 IL 123385, ¶ 18; *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 32; *Palm v. Holocker*, 2018 IL 123152, ¶ 30. According to Black's Law Dictionary, "acquire" means to "gain possession or control of; to get or obtain." Black's Law Dictionary (11th ed. 2019). Black's Law Dictionary defines "transfer" as

"[a]ny mode of disposing of or parting with an asset or an interest in an asset, including a gift, the payment of money, release, lease, or creation of a lien or other encumbrance. The term embraces every method—direct or indirect, absolute or conditional, voluntary or involuntary—of disposing of or parting with property or with an interest in property ***." *Id.*

¶ 33 With these definitions in mind, we turn back to the critical phrase of the Aircraft Use Tax Law for this appeal—"the privilege of using *** any aircraft *** acquired by *** transfer" (35 ILCS 157/10-15 (West 2018))—and reconstruct the phrase using the relevant definitions. As such, the Aircraft Use Tax Law imposes a 6.25% tax on the privilege of the exercise by any *natural individual* or *trustee* of any right or power over an aircraft incident to the ownership of the aircraft and where that right or power was obtained by *any mode* of disposing of or parting with property or an *interest in the property*. In reconstructing the operative phrase of the Aircraft Use Tax Law with the definitions of the critical terms, it is clear that the legislative intent was to cover an expansive and nearly limitless array of aircraft dispositions. But specific to the disposition of this appeal, because the Aircraft Use Tax Law (through the Use Tax Act) defines the person who can enjoy the privilege of using an aircraft as both a natural individual and a trustee, we must conclude that the legislature intended to tax as a "transfer" Shakman's change of ownership of his aircraft from himself individually to himself as trustee of his revocable trust.

¶ 34 In other words, Shakman both individually and as trustee of his revocable trust enjoyed the privilege to exercise a right over his aircraft incidental to ownership of that aircraft. As a natural

individual, Shakman enjoyed that right unfettered, and as trustee, he enjoyed that right consistent with the language of his revocable trust. And although Shakman is ultimately the same person as a natural individual and trustee, the privileges of use are different by virtue of him being a trustee. See *Hampson*, 88 Ill. App. 3d at 1061 (stating that, "while it is true that the trustee and the settlor in this case are the same person \*\*\*, the powers transferred to the trustee are held in a fiduciary relationship" and "[t]hese broad powers in the trustee cannot be attributed to the settlor even though they are one and the same person"). And when Shakman individually completed the FAA bill of sale (*i.e.*, a mode of disposing with an interest in the aircraft), Shakman as trustee of his revocable trust obtained legal title to the aircraft. Under the plain language of the Aircraft Use Tax Law, Shakman's change of ownership was a taxable event.

¶ 35    Shakman, nevertheless, highlights that when he purchased the aircraft in 2008, he acquired the aircraft as well as the privilege of using it. He argues that, in 2014, when he changed the legal ownership of the aircraft from himself individually to himself as trustee of his revocable trust, this act did not alter the personal privilege of use that he acquired in 2008, as the privilege of using the plane at all times remained with him personally. To this point, Shakman's revocable trust states that, while he, as the settlor, is living and not unable to manage his affairs, he has the "power to direct the retention or sale of any trust assets" and the "sole \*\*\* management responsibility" for any "tangible personal property" in the trust. Although it is perfectly acceptable under federal law to have the registered owner of an aircraft be a trustee of a trust (see 49 U.S.C. § 44102 (2018); 14 C.F.R. § 47.7(c) (2018)) and Shakman as the settlor may have these powers, he ignores that, under Illinois law, a natural individual is legally different than a trustee of a trust and clearly different for purposes of the Aircraft Use Tax Law as exemplified by the definition of "person" incorporated into the statute. Because Shakman individually and Shakman as trustee are legally distinct persons under Illinois common law and Aircraft Use Tax Law, the privilege of using his aircraft that had been first acquired by himself individually was acquired by transfer to himself as trustee of his trust. And under the plain language of the Aircraft Use Tax Law, he, as trustee of his trust, had to also pay for the privilege of using the aircraft, or rather, pay for the privilege of exercising any right or power over the aircraft incident to the ownership of the aircraft. The logic behind the insertion of the word "trustee" by the legislature in the Aircraft Use Tax Law through incorporation of the Use Tax Act may have been to ensure that owners of an aircraft do not place the aircraft in a trust to avoid paying the tax when they transfer the title to third parties.

¶ 36    Such a reading of the Aircraft Use Tax Law also comports with our supreme court's policy to give tax-related statutes "a common sense meaning so as to avoid making collection difficult or impossible." *Joseph Bublick*, 68 Ill. 2d at 575. A contrary result in this case, as aptly noted by the circuit court, would lead to administrative burdens in having the Department examine the intricacies of each change of ownership filed with the FAA to determine whether it triggers a tax under the Aircraft Use Tax Law and, thus, result in difficulties collecting taxes under the statute.

¶ 37    However, even if we were to conclude that the statutory language of the Aircraft Use Tax Law was ambiguous, the legislative history would not help Shakman's cause. In reviewing the statute, it is clear that the law was modeled after the Vehicle Use Tax. See 625 ILCS 5/3-1001 (West 2018) (stating "[a] tax is hereby imposed on the privilege of using, in this State, any motor vehicle \*\*\* acquired by gift, transfer, or purchase" and providing several exemptions to

taxation). Prior to January 1, 1994, the Vehicle Use Tax only referred to acquisitions by "purchase." See Pub. Act 88-194 (eff. Jan. 1, 1994) (amending 625 ILCS 5/3-1001). It was Public Act 88-194 that added acquisitions by "gift" and "transfer." *Id.* However, the legislative history did not reveal much about the addition of the word "transfer" except that the various statutory amendments in Public Act 88-194, which began as House Bill 1376, were requested by the Department to "improve [its] administration" of the Vehicle Use Tax. 88th Ill. Gen. Assem., Senate Proceedings, May 13, 1993, at 45-46 (statements of Senator Lauzen).

¶ 38    Similarly, while there is not much legislative history of the exemptions enumerated in the Aircraft Use Tax Law, an inference from one of them buttresses our conclusion that Shakman's change of ownership was a taxable event. Under the Aircraft Use Tax Law, one exemption from taxation is when "the transfer is a gift to a beneficiary in the administration of an estate and the beneficiary is a surviving spouse." 35 ILCS 157/10-15(iv) (West 2018). Our research about the legislative history of this exemption revealed nothing, but the exemption is identical to an exemption found in the Watercraft Use Tax Law, which was enacted after the Aircraft Use Tax Law. See Pub. Act 93-840 (eff. July 30, 2004) (adding 35 ILCS 158/15-1 *et seq.*). Similarly, our research about the legislative history of this exemption in the Watercraft Use Tax Law revealed nothing.

¶ 39    But the exemptions contained in both statutes are identical to an exemption in the Vehicle Use Tax. See 625 ILCS 5/3-1001 (West 2018) ("Except that the [vehicle use] tax shall not apply *** (vii) when the transfer is a gift to a beneficiary in the administration of an estate and the beneficiary is a surviving spouse."). The exemption was added to the Vehicle Use Tax by Public Act 86-152 (eff. Jan. 1, 1990) (adding 625 ILCS 5/3-1001(vii)) and was introduced as Senate Bill 51. But again, our research revealed nothing substantive about the reason for the addition except a brief mention in the Illinois Legislative Synopsis and Digest that the senate bill would amend the Illinois Vehicle Code and exempt "a surviving spouse from paying the motor vehicle use tax where the motor vehicle transfer is a gift to the surviving spouse in the administration of an estate." See I Final Legislative Synopsis and Digest of the 86th Ill. Gen. Assem. (No. 17), at 37-38. Additionally, there is a "fiscal note" from the Department stating that it "has determined that SB 51 would have only a minimal impact on State revenues, as the decrease due to this legislation would be insignificant." *Id.* at 37.

¶ 40    Despite the lack of meaningful legislative history about this exemption, we can infer from its addition to the Vehicle Use Tax in 1990 and subsequent adoption in the Aircraft Use Tax Law many years later that our legislature had estate planning in mind in determining what purchases, transfers, and gifts to tax and which to exempt but limited any exemptions related to estate planning only to the specific scenario listed in the statute. "Under the maxim of *expressio unius est exclusio alterius*, the enumeration of an exception in a statute is considered to be an exclusion of all other exceptions." *Schultz v. Performance Lighting, Inc.*, 2013 IL 115738, ¶ 17. And here, the *inclusion* of the exemption for a surviving spouse as a beneficiary in the administration of an estate means the *exclusion* of the scenario that occurred by Shakman's change of ownership from himself individually to himself as trustee of his revocable trust.

¶ 41    Still, Shakman urges us to look past the technical form of the change of ownership to the aircraft and consider the substance or economic realities of the change of ownership. In arguing that the substance of the change should take precedence over its form, Shakman posits that, because his trust was revocable, the change of ownership was not complete until the change

- 9 -

became irrevocable, which only could occur when his power to revoke or modify his trust terminated. For support, Shakman highlights the United States Supreme Court's decisions in *Sanford's Estate v. Commissioner*, 308 U.S. 39 (1939), and *Burnet v. Guggenheim*, 288 U.S. 280 (1933). In both cases, settlors created revocable trusts for named beneficiaries other than themselves and expressly reserved in themselves the power to revoke the trust and the power to modify the trust. *Sanford's Estate*, 308 U.S. at 41; *Burnet*, 288 U.S. at 281-82. Also, in both cases, the United States Supreme Court was called upon to interpret the meaning of federal gift tax law and whether transfers into revocable trusts should be taxed under such law. *Sanford's Estate*, 308 U.S. at 42-43; *Burnet*, 288 U.S. at 285-86.

¶ 42      In *Burnet*, 288 U.S. at 283, the Court provided a general overview about the theory of taxation, remarking that taxation was not concerned with the minutia of legal title to property but, rather, with "actual command over the property taxed" and the "actual benefit for which the tax is paid." (Internal quotation marks omitted.) To that end, when a settlor has transferred property to a revocable trust, the settlor divested himself of title and transferred it to another, "but the substance of his dominion was the same as if these forms had been omitted" because he was free "with reason or without, to revest title in himself, except as to any income then collected or accrued." *Id.* at 284. In other words, "the gifts were formal and unreal." *Id.*

¶ 43      Taking this theory further, in *Sanford's Estate*, 308 U.S. at 42-43, the Court found that, when Congress passed the Revenue Act of 1924, it "was aware that the essence of a transfer is the passage of control over the economic benefits of property rather than any technical changes in its title." And thus, according to the Court:

> "There is nothing in the language of the statute, and our attention has not been directed to anything in its legislative history to suggest that Congress had any purpose to tax gifts before the donor had fully parted with his interest in the property given, or that the test of the completeness of the taxed gift was to be any different from that to be applied in determining whether the donor has retained an interest such that it becomes subject to the estate tax upon its extinguishment at death." *Id.* at 44.

Under these legal principles, the Court held in both cases that there had been no taxable events under federal gift tax law when the trusts were created because the settlors retained the power to revoke or modify the trusts. *Id.* at 43-44; *Burnet*, 288 U.S. at 285-86.

¶ 44      The lesson to be gleaned from *Sanford's Estate* and *Burnet* is that "[t]he essence of a gift by trust is the abandonment of control over the property put in trust," and thus, a gift by trust is not complete until the settlor terminates his power to revoke the trust and reclaim the trust property and terminates his power to modify the terms of the trust to change the distribution of the trust property. *Smith v. Shaughnessy*, 318 U.S. 176, 181 (1943). Stated differently, so long as the settlor retains " 'economic control' " over the trust property, there is no taxable event for federal gift tax purposes. *Id.* While *Sanford's Estate* and *Burnet* were decided close to a century ago, their principles of law remain true for purposes of federal gift tax law. See 26 C.F.R. § 25.2511-2(b), (c) (1999) (a gift is complete for federal gift tax purposes when "the donor has so parted with dominion and control as to leave in him no power to change its disposition" and "[a] gift is incomplete in every instance in which a donor reserves the power to revest the beneficial title to the property in himself").

¶ 45      Similarly, under Illinois common law, the same principles from *Sanford's Estate* and *Burnet* guide what is considered a "gift." See *Jackson v. DBR Jackson Partnership*, 2016 IL App (3d) 150229, ¶ 15 (defining a gift as " 'a voluntary, gratuitous transfer of property by one

person to another where the donor manifests an intent to make such a gift and absolutely and irrevocably delivers the property to the donee' " (quoting *Hall v. Eaton*, 258 Ill. App. 3d 893, 895 (1994))). But while the legal principles of gifts as explained in *Sanford's Estate* and *Burnet* may mirror those under Illinois law, the issue in the present case does not concern whether a disposition of property to a trust is a gift and does not concern the interpretation of federal gift tax law. See *Wells Fargo Bank New Mexico, N.A. v. United States*, 319 F.3d 1222, 1225 (10th Cir. 2003) (observing that, "*for federal [gift] tax purposes*, the essence of a completed transfer is determined by whether there was a 'passage of dominion and control over the economic benefits of property' " (emphasis in original) (quoting *Sanford's Estate*, 308 U.S. at 43)). Rather, the present case concerns the interpretation of a state use tax law and whether or not Shakman's change of ownership of the aircraft was a transfer as defined by that specific law. As such, the decisions of federal courts, including the United States Supreme Court, interpreting federal gift tax law are not controlling on this court. *Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d 257, 276 (2001).

¶ 46    Moreover, we reiterate that, under the Aircraft Use Tax Law, a use tax is imposed on not merely an acquisition by "gift" but also an acquisition by "transfer." *Sanford's Estate* and *Burnet* held that a transfer by gift was incomplete where the settlor of a trust retained economic control over the property. To this end, Black's Law Dictionary defines "gift" as "[t]he voluntary transfer of property to another without compensation," and to constitute a valid gift, " '[t]he donor must *** releas[e] all dominion over the thing given and investing the donee with whatever dominion he possessed.' " Black's Law Dictionary (11th ed. 2019) (quoting W.W. Thornton, A Treatise of the Law Relating to Gifts and Advancements, at 2-3 (1893)). Thus, the definition of a gift, as defined by Black's Law Dictionary, is consistent with the principles of *Sanford's Estate* and *Burnet*. And had the Aircraft Use Tax Law just taxed acquisitions by gifts, perhaps Shakman's change of ownership, where he maintained economic control over the aircraft, would not be a taxable event. But the language of the Aircraft Use Tax Law clearly indicates that the legislature was concerned with taxing not just gifts but additional means of acquisition.

¶ 47    Additionally, Shakman directs us to two cases from the Supreme Court of Mississippi and the Supreme Court of Oklahoma. In *Mississippi State Tax Comm'n v. Oscar E. Austin Trust*, 719 So. 2d 1172, 1172-73 (Miss. 1998), an individual created a revocable trust, in which he was the trustee, and transferred his vehicle into the trust by changing the title to the vehicle, though the use and possession of the vehicle remained with him personally. Due to the transfer, the State of Mississippi imposed on him a motor vehicle sales tax for his trust "purchasing" the vehicle. *Id.* at 1173. The Supreme Court of Mississippi held that the transfer was not subject to Mississippi's motor vehicle sales tax. *Id.* at 1175-76. In so holding, the court looked at the language of the motor vehicle sales tax statute, concluded the word "purchase" was synonymous with "sale," and determined that the word "sale" by statutory definition included any "closed transaction." *Id.* at 1174. Ultimately, and based in part on the principles discussed in *Sanford's Estate* and *Burnet*, the court concluded that the settlor's transfer to his trust was not a closed transaction because he retained the power to revest title of the vehicle in himself individually by either revoking the trust or removing the vehicle from the trust. *Id.* at 1174-75.

¶ 48    Although the facts of the present case and *Oscar E. Austin Trust* are quite similar, the Supreme Court of Mississippi was called upon to interpret the meaning of "purchase" under the Mississippi motor vehicle sales tax law, which ultimately led the court to determine

whether a closed transaction had occurred by virtue of the settlor transferring his vehicle into his revocable trust. Here, in contrast, although the word "purchase" is included in the Aircraft Use Tax Law, that is not the critical word for purposes of this appeal. Rather, the critical word is "transfer," which we have interpreted to have a broad and expansive plain meaning. Had the Aircraft Use Tax Law included acquisitions by "purchase" only and not also acquisitions by "transfer," Shakman's change of ownership may not have been a taxable transaction. But because the Aircraft Use Tax Law includes acquisitions by "transfer" and that is the word requiring interpretation, the present case requires a completely different analysis from *Oscar E. Austin Trust*, and therefore, that decision is inapposite.

¶ 49    In *Imaging Services, Inc. v. Oklahoma Tax Comm'n, Excise Tax Division*, 866 P.2d 1204, 1204 (Okla. 1993), a corporation that had three equal shareholders bought an aircraft, and then, before dissolving, the corporation transferred a one-third interest in the aircraft to each of the shareholders individually. Later, the three individuals transferred the ownership of the aircraft to a limited partnership they had created and ultimately transferred ownership of the aircraft to a corporation as trustee of a trust in which the limited partnership was the beneficiary. *Id.* at 1205. The transfer to the trust was made expressly for the purposes of complying with FAA registration requirements, and the trust agreement made clear that the transfer was of "bare legal title" only, not "beneficial ownership" or a "right to possession." *Id.* at 1205, 1207. The State of Oklahoma had an aircraft excise tax, which imposed a tax for "the transfer of legal ownership" of an aircraft, and based on this language, the state imposed the tax based on the transfer of legal ownership from the limited partnership to the corporation as trustee of the trust. (Emphasis omitted.) *Id.* at 1205.

¶ 50    The Supreme Court of Oklahoma held that there had been no transfer of legal ownership as contemplated by Oklahoma's aircraft excise tax statute. *Id.* at 1207. Specifically, the court found that the trustee of the trust did not "have all right, title and interest in the aircraft," as the trust agreement provided "in great detail that the transfer [was] of bare legal title only." *Id.* The court determined that, "[w]hile legal title was 'transferred' in the sense that title is now held in a different manner, the change of legal ownership contemplated by the statute *** involves a change of ownership and possession." *Id.* The court accordingly concluded that, because "there was no transfer of beneficial ownership and no right to possession of the property transferred in the transaction complained of," the state erred in imposing the aircraft excise tax. *Id.*

¶ 51    The present case is distinguishable from *Imaging Services* in two critical respects. First, in *Imaging Services*, where the transfer to the corporation as trustee of the trust was consummated solely for FAA registration requirements, the same cannot be said about the transfer from Shakman individually to Shakman as trustee of his revocable trust. This transfer was not done solely for the purpose of complying with FAA registration requirements but, rather, done for estate planning purposes whereby, when Shakman dies, his assets, including his aircraft, are to be given to his named beneficiaries in accordance with his trust. And second, while in *Imaging Services* there was no change of legal ownership as contemplated by Oklahoma's aircraft excise tax statute, our foregoing analysis has indicated a clear legislative intent based on the plain language of Aircraft Use Tax Law to cover the type of change of ownership that Shakman consummated. To be sure, as we also previously mentioned, the fact that Aircraft Use Tax Law has an exemption from taxation for a surviving spouse as a beneficiary in the administration of an estate further demonstrates our legislature's intent to cover the type of change of

ownership that Shakman consummated. Because of these critical differences between the present case and *Imaging Services*, we find Shakman's reliance on the decision unpersuasive.

¶ 52     In one last attempt to have us look past the technical form of the change of ownership to the aircraft and consider the substance of it, Shakman argues that, under the economic-reality doctrine applied by Illinois courts, his change of ownership did not constitute a taxable event. Shakman highlights this court's decision in *JI Aviation, Inc. v. Department of Revenue*, 335 Ill. App. 3d 905, 907-08 (2002), where the seller of an aircraft—a company that was not a retailer of aircrafts—used an intermediary—a company that was a retailer of aircrafts—to effectuate the sale of the aircraft to the buyer. The intermediary was used so that the seller could perform a like-kind exchange for federal tax purposes. *Id.* at 907. The Department imposed a use tax under the general Use Tax Act on the buyer under the rationale that the technical seller of the aircraft was the intermediary, and therefore, an exemption from taxation for occasional sellers did not apply. *Id.* at 909, 915. An administrative law judge affirmed the Department's imposition of the tax, but the circuit court reversed the decision. *Id.* at 909-10.

¶ 53     On appeal, this court first had to determine the applicable standard of review and ultimately concluded that it was a mixed question of law and fact because an analysis of the facts was necessary to determine which entity was actually the seller of the aircraft before determining the legal question of whether the transaction fell within the occasional sale exemption to taxation. *Id.* at 913-14. After determining the standard of review, this court utilized several factors discussed in *Weber-Stephen*, 324 Ill. App. 3d at 900-02, another case involving a like-kind exchange of an aircraft, in applying the substance-over-form doctrine "to determine how to treat differently situated third-party intermediaries in a Code section 1031 like-kind exchange." *JI Aviation*, 335 Ill. App. 3d at 920. And when considering these factors, the court found that the true seller of the aircraft was the company who was not a retailer of aircrafts, and therefore, the occasional-seller exemption to taxation applied. *Id.* at 920-23.

¶ 54     Although Shakman acknowledges that the facts of *JI Aviation* bear little resemblance to the facts of his case, he posits that we should adopt the substance-over-form analysis from the case and use it to find that there was no taxable event from his change of ownership. But in *JI Aviation*, this court had to analyze the substance of the transaction, or economic realities, because there was a factual question about who was the true seller of the aircraft. In other words, the substance of the transaction was at the heart of resolving the factual question raised by the case. In contrast to the inquiry required in *JI Aviation*, the present case does not require us to engage in any sort of factual determination, and thus, no inquiry about the substance of the transaction is necessary. Furthermore, there is no indication from *JI Aviation* or *Weber-Stephen* that a substance-over-form inquiry was meant to apply to all taxation situations.

¶ 55     We do not deny that a central tenet of tax law is based on the economic-reality doctrine. As was stated by the United States Supreme Court in *Burnet*, 288 U.S. at 283, "[t]axation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid." (Internal quotation marks omitted.) But the present case concerns a specific taxing statute which, by its unambiguous plain language, was intended to be broad and expansive. "A court must interpret and apply statutes in the manner in which they are written." *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 394-95 (1998). And when a statute is unambiguous, we have no power to depart from its plain language and "read into it exceptions, limitations or conditions which the legislature did not express." *Skokie Castings, Inc. v. Illinois Insurance Guaranty Fund*, 2013 IL 113873,

¶ 38. In sum, we agree with the circuit court that the privilege of using Shakman's aircraft was acquired by himself as trustee of his trust by transfer from himself individually when he changed the legal ownership of the aircraft using the FAA bill of sale.

¶ 56    Because we have concluded that Shakman's change of ownership from himself individually to himself as trustee of his revocable trust was a taxable event under the Aircraft Use Tax Law and Shakman has not invoked any statutory exemption, the Department properly imposed the tax against him. Accordingly, we affirm the circuit court's rulings on the parties' cross-motions for summary judgment.

¶ 57    While we have reached this conclusion, we are not unsympathetic to Shakman's cause. The Department imposed against him a nearly $8000 tax (inclusive of a penalty and interest) for routine estate planning. And certainly, if Shakman decided to remove the plane from his revocable trust, he could very well incur a third tax on his airplane. But as previously discussed, we must interpret a statute and apply it consistently with the manner it is written (*Henrich*, 186 Ill. 2d at 394-95), and when a statute is unambiguous, we have no power to depart from its plain language and "read into it exceptions, limitations or conditions which the legislature did not express." *Skokie Castings*, 2013 IL 113873, ¶ 38. Only the legislature has the power to amend a statute. *Henrich*, 186 Ill. 2d at 394.

¶ 58    As defendants note, some state legislatures have made an express exemption to their tax laws for the scenario posed by Shakman in this case. For example, Virginia imposes "in addition to all other taxes and fees of every kind now imposed by law, a tax upon the retail sale of every aircraft sold in the Commonwealth and upon the use in the Commonwealth of any aircraft required to be licensed by the [Virginia] Department of Aviation." Va. Code Ann. § 58.1-1502 (West 2018). However, the definition of "sale" excludes

> "a transfer of ownership or possession *** to trustees of a revocable *inter vivos* trust, when the owners of the aircraft and the beneficiaries of the trust are the same persons, regardless of whether other beneficiaries may also be named in the trust instrument, or transferred by trustees of such a trust to beneficiaries of the trust following the death of the grantor, when no consideration has passed between the grantor and the beneficiaries in either case." *Id.* § 58.1-1501.

California has a similar exemption. See Cal. Rev. & Tax. Code § 6285(b)(1), (2) (West 2018) (exempting from sales and use taxes aircrafts that were sold to a revocable trust under certain conditions, including when the "seller has an unrestricted power to revoke the trust" and the "sale does not result in any change in the beneficial ownership of the property"). Should our legislature believe that no aircraft use tax should apply in circumstances such as Shakman's, it may follow the lead of Virginia and California and expressly exempt such transfers.

¶ 59                                   III. CONCLUSION
¶ 60    For the foregoing reasons, we affirm the judgments of the circuit court of Cook County.

¶ 61    Affirmed.