2020 IL App (1st) 200330

No. 1-20-0330

Fourth Division
December 31, 2020

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

|  |  |  |
|---|---|---|
| ILHAN USKUP and TIMUR USKUP, | ) | Appeal from the Circuit Court |
|  | ) | of Cook County. |
| Plaintiffs-Appellants, | ) |  |
|  | ) | No. 2019 L 1114 |
| v. | ) |  |
|  | ) | The Honorable |
| JOSEPH C. JOHNSON, | ) | Margaret Brennan, |
|  | ) | Judge Presiding. |
| Defendant-Appellee. | ) |  |
|  | ) |  |

_____

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Lampkin and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1        Plaintiffs, Ilhan and Timur Uskup, filed a legal malpractice lawsuit against defendant

attorney Joseph C. Johnson, based on his involvement in drafting trust documents for their

deceased father. Plaintiffs alleged that attorney Johnson's drafting of the trust documents

included ambiguous provisions, which caused the successor trustee to file a petition to interpret

the terms of the trust (petition for construction) after the death of plaintiffs' father, incurring

approximately $300,000 in legal fees. Plaintiffs alleged that these sums would have otherwise

been distributed to the trust's beneficiaries, including plaintiffs. The trial court dismissed

plaintiffs' legal malpractice action under section 2-615 of the Code of Civil Procedure (Code)

(735 ILCS 5/2-615 (West 2018)) for failure to state a cause of action. Plaintiffs appeal, and for the reasons that follow, we affirm the trial court's dismissal but reverse its designation of that dismissal as being "with prejudice."

¶ 2                                    BACKGROUND

¶ 3        As the instant appeal arises from a motion to dismiss, all facts are taken from the allegations of the complaint and the exhibits attached thereto.

¶ 4        In 1989, Ergin Uskup retained attorney Johnson's services to create the Ergin Uskup Living Trust (trust); attorney Johnson drafted the trust agreement. At the time, Ergin[1] was married to Sezgin Uskup and had three children from a prior marriage, including plaintiffs.[2] In 2011, at Ergin's request, attorney Johnson drafted a restatement of the trust agreement, which declared that the purpose of the trust included his "wish to control how my property will be left to my beneficiaries after my death." The restatement provided that, upon Ergin's death, the trust estate was to be distributed 40% to Sezgin, if she survived him; 18% to each child, if they survived him, or else to their descendants; and 6% to Ergin's brother, if he survived Ergin. The restatement further provided that, "[t]o the greatest extent possible under applicable law, it is my intention to *** enable my Trustee to give each trust beneficiary the maximum possible benefit and enjoyment of the trust income and principal to which the beneficiary is entitled."

¶ 5        Section 4.01(d) of the restatement to the trust provided that, during his lifetime, Ergin "shall have the power to amend or revoke my Trust, in whole or in part." However, section 15.04(b) provided that, "[n]otwithstanding my right to amend this agreement, as described in Section

_____

[1]As all parties share the same surname, we refer to them by their first names when discussing them.

[2]The third child, Ela, is not a named party and does not appear to have had any involvement in the instant litigation.

4.01(d), under no circumstances shall I have the right to reduce the percentage of My Trust Property that is provided in this agreement for my spouse, Sezgin, unless Sezgin approves such amendment in writing."

¶ 6        In 2015, Sezgin filed a petition for dissolution of marriage. While the dissolution proceedings were pending, on May 31, 2016, attorney Johnson drafted an amendment to the restatement (2016 amendment), which directed the trustee "to administer the above Trust Agreement in the same manner as if my wife, Sezgin G. Uskup, had died prior to the date of this Amendment." Sezgin did not consent to this amendment. Ergin died on August 7, 2016,[3] while the dissolution action was still pending.

¶ 7        On November 30, 2016, the successor trustee filed a petition to interpret the terms of the trust in case No. 2016 CH 15492 (trust litigation). The successor trustee noted the conflicts between section 4.01 of the restatement, which gave Ergin the absolute right to amend or revoke his trust; section 15.04(b), which required Sezgin's consent in order to reduce her percentage interest; and the 2016 amendment, which directed the trustee to treat Sezgin as having predeceased Ergin. The successor trustee alleged that it was unable to distribute the balance of the trust until the ambiguity was resolved.

¶ 8        In the trust litigation, Sezgin's attorneys argued that there was no ambiguity in the trust documents and that the restatement clearly required Sezgin's consent to reduce her interest. Under this interpretation, Sezgin would have received approximately $1.9 million, representing 40% of the trust estate. Plaintiffs retained their own counsel, who took the position that, while the trust documents were ambiguous, it was Ergin's intent to eliminate Sezgin's interest.

---

[3]The complaint mistakenly lists August 17, 2015, as the date of Ergin's death.

¶ 9        The trust litigation continued for nearly two years, until the trial court entered judgment on the pleadings on July 2, 2018. In its 20-page written opinion, the court noted that it had previously determined that section 15.04(b) was ambiguous. The court further noted that there was a lack of Illinois authority on the issue. The court began its analysis by finding that it had previously determined that, at the time the trust was established, Ergin intended to create a revocable trust, as he had expressly reserved the right to revoke the trust during his lifetime without the consent of a beneficiary. Consequently, the court found that the plain language of the restatement meant that prior to his death, Ergin was free to amend or change the trust at any time and for any reason. However, the court further found that it had previously determined that the presence of both section 4.01(d) and 15.04 "gave rise to more than one reasonable interpretation of [Ergin's] power to control the disposition of his Trust while seemingly limiting himself as to one method of amendment." Thus, the court found that the restatement was "patently ambiguous" on its face, reasoning:

> "As the Court set forth above, Ergin was able to use his power of revocation to revoke the Trust completely, thereby eliminating Sezgin's interest without ever setting forth such change explicitly as a new provision in the Trust Agreement. Additionally, Ergin could change the Trust Agreement in a way in which Sezgin's beneficiary interest no longer existed. Despite these potential factual circumstances, nowhere in the provisions cited by the parties does it indicate that Ergin contemplated these scenarios."

¶ 10       Examining the language of the restatement, the court found that sections 4.01(d) and 15.04(b) could operate in cohesion, finding that "while Ergin retained the right to amend any part of the Trust at any time or for whatever reason, he also expressly denoted a specific circumstance as to which he required her consent. Additionally, the plain language of Section

4

15.04(b) indicated that the provision was intended to operate as a special exception to his general ability to amend the Trust as he saw fit." Accordingly, since the court found that the provisions of the restatement could be reconciled, it proceeded to determine whether the 2016 amendment was valid.

¶ 11    The court found that the 2016 amendment sought to treat Sezgin as predeceased prior to the date of the amendment's execution. The court found that, "[a]s such, if Sezgin was predeceased at the time of the amendment's execution, Ergin would not have needed her written approval to amend the Trust as to her beneficiary interest, simply because the interest did not exist anymore." The court further noted that the restatement also contemplated the changing of beneficiary interests in a different provision, which provided that Sezgin would be treated as predeceased upon dissolution of their marriage, and nothing in the language of section 15.04(b) prevented Ergin from accelerating this provision, nor did it prevent Ergin from revoking the trust as a whole or any property within the trust. Therefore, the court found that the 2016 amendment was valid and operated to eliminate Sezgin's beneficiary interest.

¶ 12    The trust incurred $304,400.25 in legal expenses as a result of the trust litigation, and plaintiffs additionally incurred $29,525.65 in attorney fees that were not reimbursed by the trust.

¶ 13    On February 1, 2019, plaintiffs filed a complaint for legal malpractice against attorney Johnson. The complaint contained two counts, one for each plaintiff. The complaint alleged that the primary purpose of Ergin's attorney-client relationship with attorney Johnson was to benefit his trust beneficiaries, including plaintiffs, and to distribute to them the maximum benefit and enjoyment of the trust income and principal. As such, attorney Johnson owed Ergin a duty of care to properly advise him in the drafting of documents that would carry out his

intent, and that duty extended to plaintiffs, Ergin's directly intended third-party beneficiaries. The complaint alleged that attorney Johnson violated his duty in the following ways:

"a. In order to carry out Ergin's intent to eliminate Sezgin as a beneficiary of the Trust and to provide for the remaining beneficiaries, drafted the Amendment in a manner that made the Trust 'patently ambiguous' and subject to litigation;

b. In order to carry out Ergin's intent to eliminate Sezgin as a beneficiary of the Trust and to provide for the remaining beneficiaries, failed to revoke and thereafter restate the Trust;

c. Failed to prepare non-ambiguous estate planning documents that carried out Ergin's intent to eliminate Sezgin as a beneficiary of the Trust and to provide for the remaining beneficiaries;

d. Was otherwise negligent."

The complaint alleged that, as a result of attorney Johnson's conduct, plaintiffs were damaged "in that the Trust, among other things, unnecessarily paid and incurred substantial attorneys' fees and expenses litigating the proper construction of Ergin's Trust and the rights of its beneficiaries that would have otherwise been distributed to [plaintiffs]." The complaint further alleged that plaintiffs were damaged because they personally incurred legal fees and expenses litigating the proper construction of the trust documents. Each plaintiff sought $109,126.90 in compensatory damages, plus prejudgment interest and attorney fees and costs.

¶ 14    On July 3, 2019, attorney Johnson filed a motion to dismiss the complaint under section 2-615 of the Code. Attorney Johnson noted that the trust documents he drafted had been construed both to give effect to Ergin's wishes and to increase plaintiffs' shares in the trust estate by 12% each, such that plaintiffs received a total value of over $1 million more than they

would have otherwise received. Attorney Johnson claimed that the complaint should be dismissed for two reasons. First, attorney Johnson claimed that plaintiffs sustained no actionable damages because his legal work succeeded in divesting Sezgin of her beneficial interest in the trust, thereby increasing plaintiffs' own percentage interests. Additionally, attorney Johnson claimed that both of plaintiffs' claims of negligence, relating to the ambiguity of the trust documents and the alleged failure to revoke and restate the trust, were founded upon alleged conduct that could not be proven to have proximately caused plaintiffs' claimed damages. Attorney Johnson argued that plaintiffs' claims were predicated on speculating that, had the trust documents been drafted differently, Sezgin would not have challenged them and the trust would not have incurred legal fees, claims that "would require an overwhelming amount of speculation" in proving proximate cause.

¶ 15    In response, plaintiffs claimed that the entirety of the trust litigation could have been avoided if attorney Johnson had properly drafted the trust documents, meaning that they incurred actionable damages even though they " 'prevailed' " in the trust litigation. Plaintiffs further claimed that attorney Johnson's argument that the trust documents would have been challenged regardless consisted of inappropriate speculation or, at best, raised questions of fact that could not be resolved on a motion to dismiss.

¶ 16    On September 19, 2019, the trial court entered an order granting attorney Johnson's motion to dismiss. The court found that, in the trust litigation, Sezgin argued that the 2016 amendment was ineffective because it reduced her interest without her written approval, and "[a] revocation or any other method of disinheriting Sezgin would be subject to the same challenge." The court noted that, in the trust litigation, plaintiffs argued that section 15.04(b) of the restatement permitted revocation without consent, and Sezgin argued against that point.

The court found that, "[n]o matter what form the 2016 Amendment took, it would have been subject to the argument that it reduced her interest without her written approval." The court additionally found that plaintiffs prevailed in the trust litigation on a judgment on the pleadings, meaning that the court in that litigation determined that there was no genuine issue of material fact regarding the validity of the 2016 amendment. The court found that, "[a]s such, Plaintiff[s] fail[ ] to allege sufficient facts to establish that [attorney Johnson's] negligence was the proximate cause of Plaintiffs' injuries." Accordingly, the court granted the motion to dismiss with prejudice.

¶ 17    On October 15, 2019, plaintiffs filed a motion to reconsider, claiming that the trial court's dismissal was based on speculation, involved factual inferences construed against plaintiffs, and relied on factual defenses that were not appropriate for consideration on a section 2-615 motion to dismiss.

¶ 18    On January 13, 2020, the trial court entered an order denying plaintiffs' motion to reconsider. The court found that "[i]t is evident that Plaintiffs fundamentally misunderstand the basis for the Court's decision" and expressly noted that it did not rely on any extraneous factual allegations or speculation. The court explained:

> "The Court took judicial notice of [the trust litigation court's] ruling in the underlying Trust Litigation, particularly that the litigation was concluded by a 2-615 Motion for Judgment on the Pleadings. Plaintiffs prevailed in the Trust Litigation on what is essentially the earliest possible point. In light of this, Plaintiffs' theory of their case is as follows[:] despite prevailing in the underlying Trust Litigation on a 2-615 Judgment on the Pleadings, Plaintiffs incurred attorneys' fees in defending their claim to their inheritance, and had [attorney Johnson] drafted the documents differently

Plaintiffs would not have incurred the same litigation expenses. This could happen in one of two ways[:] either Sezgin Uskup does not sue, or she does sue but Plaintiffs incur less costs. Neither of which is reasonable."

¶ 19     The court noted that only well-pled allegations must be taken as true and that it was not required to draw unreasonable inferences in order to sustain a pleading. As such, the court found:

"It is simply not a reasonable inference to conclude that had [attorney Johnson] instead revoked and restated the Trust, Sezgin Uskup, a woman who stood to [lose] a substantial amount of money, would not have challenged such an action on the same grounds that she did in the Trust Litigation, particularly when it would have been subject to the same challenges as the Amendment, namely[,] that it was an attempt to reduce her interest without her consent. Nor is it reasonable to conclude that the litigation could have been won more easily, since Plaintiffs prevailed on a 2-615 Judgment on the Pleadings.

The Court did not engage in speculation in issuing its prior Order, rather the Court refused to be a party to Plaintiffs' unreasonable inferences and speculation regarding the outcome of their proposed alternative method of disinheriting Sezgin Uskup."

¶ 20     Plaintiffs timely filed a notice of appeal, and this appeal follows.

¶ 21                                    ANALYSIS

¶ 22     On appeal, plaintiffs claim that the trial court erred in dismissing their complaint because they sufficiently stated a cause of action for legal malpractice. A motion to dismiss under section 2-615 of the Code challenges the legal sufficiency of the complaint by alleging defects on its face. *Young v. Bryco Arms*, 213 Ill. 2d 433, 440 (2004); *Wakulich v. Mraz*, 203 Ill. 2d

223, 228 (2003). The critical inquiry is whether the allegations in the complaint are sufficient to state a cause of action upon which relief may be granted. *Wakulich*, 203 Ill. 2d at 228. In making this determination, all well-pleaded facts in the complaint and all reasonable inferences that may be drawn from those facts are taken as true. *Young*, 213 Ill. 2d at 441. In addition, we construe the allegations in the complaint in the light most favorable to the plaintiff. *Young*, 213 Ill. 2d at 441. We review *de novo* an order granting a section 2-615 motion to dismiss. *Young*, 213 Ill. 2d at 440; *Wakulich*, 203 Ill. 2d at 228. *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 23    As an initial matter, in considering whether the trial court properly dismissed plaintiffs' complaint, it is helpful to briefly explain the basis for the underlying trust litigation and attorney Johnson's role in the process. As noted, the trust litigation revolved around interpretation of Ergin's trust—specifically, the 2011 restatement and the 2016 amendment. Once a trust is created and property is transferred into the trust, the trustee holds legal title to the property while the beneficiary holds the equitable title. *Shakman v. Department of Revenue*, 2019 IL App (1st) 182197, ¶ 26. However, the trustee's holding of legal title to the property and his actions with respect to that property are determined by the instrument that creates the trust, and the trustee must manage the trust and its property in accordance with the terms of the trust. *Shakman*, 2019 IL App (1st) 182197, ¶ 26. Thus, "the trustee's role with respect to the trust makes his position unique from that of a natural person, whose actions are not restrained by a trust instrument." *Shakman*, 2019 IL App (1st) 182197, ¶ 26.

¶ 24    "[A]s the name implies, a revocable trust may be revoked at the pleasure of the settlor." *Shakman*, 2019 IL App (1st) 182197, ¶ 27. However, the power of revocation must generally be expressly provided for in the trust document. *Shakman*, 2019 IL App (1st) 182197, ¶ 27. Similarly, the settlor of a revocable trust has the power to modify the trust in accordance with the trust's language. *Shakman*, 2019 IL App (1st) 182197, ¶ 27.

¶ 25    In the case of Ergin's trust, section 4.01(d) of the restatement provided that, during his lifetime, Ergin "shall have the power to amend or revoke my Trust, in whole or in part." As the trial court in the trust litigation found, this language expressed Ergin's intent that the trust be a revocable trust. However, section 15.04(b) limited the extent of Ergin's power by providing that, "[n]otwithstanding my right to amend this agreement, as described in Section 4.01(d), under no circumstances shall I have the right to reduce the percentage of My Trust Property that is provided in this agreement for my spouse, Sezgin, unless Sezgin approves such amendment in writing." As the court found in the trust litigation, the presence of both of these provisions created an ambiguity, as there was more than one reasonable interpretation of Ergin's intent with respect to Sezgin's interest. Adding to the level of complication, the 2016 amendment set forth Ergin's desire to treat Sezgin as having died prior to the date of the amendment, leading to the question of whether this amendment complied with the terms set forth in the restatement. The interplay between these three provisions led to the trust litigation, and it is attorney Johnson's actions in drafting these documents that plaintiffs allege led to their malpractice action. With this background, we turn, then, to considering whether plaintiff's complaint stated a cause of action for legal malpractice.

¶ 26    "In an action for legal malpractice the plaintiff must plead and prove that: the defendant attorney owed the plaintiff a duty of due care arising from the attorney-client relationship; that

the defendant breached that duty; and that as a proximate result, the plaintiff suffered injury [citation] in the form of actual damages [citation]." *Governmental Interinsurance Exchange v. Judge*, 221 Ill. 2d 195, 199 (2006); *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 306 (2005). Our supreme court has explained that "[t]he injury in a legal malpractice action is not a personal injury [citation], nor is it the attorney's negligent act itself [citation]. Rather, it is a pecuniary injury to an intangible property interest caused by the lawyer's negligent act or omission." *Northern Illinois Emergency Physicians*, 216 Ill. 2d at 306. Thus, for purposes of a legal malpractice action, a client is not considered to be injured until he has suffered a loss for which he may seek monetary damages, and the fact that an attorney may have breached a duty of care is not, in itself, sufficient to sustain a cause of action. *Northern Illinois Emergency Physicians*, 216 Ill. 2d at 306. "Even if negligence on the part of the attorney is established, no action will lie against the attorney unless that negligence proximately caused damage to the client. [Citation.] The existence of actual damages is therefore essential to a viable cause of action for legal malpractice." *Northern Illinois Emergency Physicians*, 216 Ill. 2d at 306-07.

¶ 27    In the case at bar, the trial court's dismissal was based on finding that plaintiffs had not pleaded sufficient facts to show that attorney Johnson's conduct was the proximate cause of any injury to plaintiffs. Accordingly, we begin our analysis by examining the issues of proximate cause and damages.

¶ 28    In a legal malpractice action, damages are never presumed, and must be "affirmatively established by the aggrieved client." *Northern Illinois Emergency Physicians*, 216 Ill. 2d at 307. "Unless the client can demonstrate that he has sustained a monetary loss as the result of some negligent act on the lawyer's part, his cause of action cannot succeed." *Northern Illinois*

*Emergency Physicians*, 216 Ill. 2d at 307. However, demonstrating the existence of damages requires "more than supposition or conjecture," and where damages are speculative, no cause of action for malpractice exists. *Northern Illinois Emergency Physicians*, 216 Ill. 2d at 307.

¶ 29        "A successful legal malpractice claim places the plaintiff in the same position that she would have occupied but for the attorney's negligence." *Nettleton v. Stogsdill*, 387 Ill. App. 3d 743, 749 (2008). Generally, in cases involving litigation, a plaintiff must prove a " 'case within a case' " in order to establish legal malpractice, as "no legal malpractice exists unless the attorney's negligence resulted in the loss of an underlying cause of action." *Judge*, 221 Ill. 2d at 200. Proving damages requires establishing what the result should have been, absent the attorney's negligence. *Union Planters Bank, N.A. v. Thompson Coburn LLP*, 402 Ill. App. 3d 317, 344 (2010).

¶ 30        However, in cases involving transaction-based malpractice, "proving a case-within-a-case is not always required *** where damages can otherwise be established." *Union Planters Bank*, 402 Ill. App. 3d at 344. For instance, "[i]f a client suffers damage because of the happening of a foreseeable risk of which he or she was not informed, the attorney may be liable. In such a case, the attorney's liability is not predicated upon the impropriety of the chosen course of action, but rather upon the failure to inform the client sufficiently to enable him or her to voluntarily accept the risk attendant thereto." *Metrick v. Chatz*, 266 Ill. App. 3d 649, 653-54 (1994). To establish the element of proximate cause in such a case, the client must plead and prove that had the undisclosed risk been known, he or she would not have accepted the risk and consented to the recommended course of action. *Metrick*, 266 Ill. App. 3d at 655. "Such is not the case, however, when the course of action the attorney recommends is in itself improper under the circumstances presented. If an attorney's advice falls below the standard of

reasonable legal services, any damages which proximately flow from the client's acceptance of that advice are recoverable in a negligence action against the attorney." *Metrick*, 266 Ill. App. 3d at 655.

¶ 31    In the case at bar, plaintiffs claim that, due to attorney Johnson's conduct in drafting the trust documents, the trust incurred attorney fees in trust litigation, which would not have been required had (1) attorney Johnson drafted a nonambiguous trust and restatement and (2) attorney Johnson had revoked the restatement instead of amending it in 2016 in order to divest Sezgin from her interest. We agree with the trial court that plaintiffs fail to plead facts to demonstrate that attorney Johnson's conduct proximately caused them to incur damages. We note that, in response to the trial court's dismissal, in their briefing before the trial court and before this court, plaintiffs repeatedly argue that the trial court engaged in inappropriate speculation in dismissing their complaint.

¶ 32    However, as the trial court found, plaintiffs have it exactly backwards. They, as the parties bringing the action, have the burden of pleading, and ultimately proving, the elements of their claim. See *Judge*, 221 Ill. 2d at 199 (the plaintiff must plead and prove the elements of a legal malpractice claim). "It is the plaintiff's burden to plead facts which, if true, establish a proximate causal relationship between the negligence of the attorney and the damages alleged to have been suffered as a consequence thereof." *Metrick*, 266 Ill. App. 3d at 654.

¶ 33    In the case at bar, plaintiffs are alleging that their damages consist of the attorney fees incurred by the trust, and by them individually, as a result of the trust litigation. The court in *Nettleton* explained the circumstances in which attorney fees are recoverable as damages in legal malpractice actions, and we find its discussion instructive here. As the *Nettleton* court explained, "[a] plaintiff in a legal malpractice case may recover attorney fees when the fees

constitute an ordinary loss resulting from the attorney's negligence." *Nettleton*, 387 Ill. App. 3d at 749. This follows from the principle that a successful legal malpractice claim places the plaintiff in the same position that she would have occupied but for the attorney's negligence. *Nettleton*, 387 Ill. App. 3d at 749. Thus, where a plaintiff alleges that the defendant's negligence caused her to lose her cause of action or to receive a smaller award than she would have otherwise received, an award of damages equal to the amount she did not receive as a result of the defendant's negligence is necessary to place the plaintiff in the same position that she would have occupied absent the negligence. *Nettleton*, 387 Ill. App. 3d at 752. Consequently, in such a case, "courts require the plaintiff to demonstrate that but for the defendant's negligence she would have received a larger award than she otherwise did." *Nettleton*, 387 Ill. App. 3d at 752.

¶ 34    However, where a plaintiff alleges that the defendant's negligence caused her to incur attorney fees, an award of damages equal to the amount of attorney fees she would not have had to spend but for the defendant's negligence is necessary to place the plaintiff in the same position she would have occupied had the defendant not been negligent. *Nettleton*, 387 Ill. App. 3d at 752. "[J]ust as a plaintiff who allege[d] a loss of her cause of action or a larger award must show that she would have received a larger award but for the defendant's negligence [citation], a plaintiff alleging incurment of attorney fees as a result of the defendant's negligence must demonstrate that she would not have incurred the claimed fees in the absence of the defendant's negligence." *Nettleton*, 387 Ill. App. 3d at 752. As the *Nettleton* court explained, "[s]uch a rule is necessary because, to allow a plaintiff to recover attorney fees she would have incurred even in the absence of the defendant's negligence would place

15

the plaintiff in a position better than that she would have occupied had the defendant not been negligent." *Nettleton*, 387 Ill. App. 3d at 752.

¶ 35     In sum, then, "[a] legal malpractice plaintiff may recover as actual damages the attorney fees incurred as a result of the defendant's malpractice, so long as the plaintiff can demonstrate she would not have incurred the fees in the absence of the defendant's negligence." *Nettleton*, 387 Ill. App. 3d at 753. Thus, in the case at bar, plaintiffs were required to demonstrate that, if attorney Johnson had drafted the trust documents differently, they—and the trust—would not have incurred the attorney fees that they are claiming as damages. No such allegation appears in the complaint. Plaintiffs do not allege that, absent the negligent drafting, there would have been no trust litigation. Nor do plaintiffs allege that, even if there was litigation, it would have resulted in fewer attorney fees. Instead, plaintiffs simply make a blanket allegation that "[h]ad [attorney Johnson] complied with [his] duty of care and otherwise not been negligent, [plaintiffs] would not have been damaged as aforesaid." We agree with the trial court that such an allegation is not sufficient to demonstrate that they would not have incurred the attorney fees absent attorney Johnson's negligence.

¶ 36     However, we must emphasize that a dismissal under section 2-615 of the Code occurs at the earliest stages of the litigation. The critical inquiry in deciding such a motion is whether the allegations in the complaint are sufficient to state a cause of action upon which relief may be granted. *Wakulich*, 203 Ill. 2d at 228. A dismissal under section 2-615 of the Code should be made with prejudice "only where it is clearly apparent that the plaintiffs can prove no set of facts entitling recovery." *Norabuena v. Medtronic, Inc.*, 2017 IL App (1st) 162928, ¶ 39. Here, we have concluded that the trial court properly determined that the complaint, as presently drafted, does not contain sufficient allegations to state a cause of action for legal malpractice.

16

However, plaintiffs did not have the opportunity to amend their complaint to attempt to remedy any deficiencies, and when the trial court granted the motion to dismiss with prejudice, plaintiffs lost such an opportunity. In the case at bar, we are unwilling to say that plaintiffs would be unable to draft their complaint in such a way as to properly allege such a cause of action. If a plaintiff can state a cause of action by amending his complaint, dismissal with prejudice should not be granted. *Buffa v. Haideri*, 362 Ill. App. 3d 532, 540 (2005). Accordingly, while we affirm the trial court's dismissal, we reverse the designation of that dismissal as "with prejudice." We take no position on whether plaintiffs will succeed in any attempt to amend their complaint, but plaintiffs should be afforded the opportunity to try to correct any deficiencies in their complaint, should they choose to do so.

¶ 37                                CONCLUSION

¶ 38        For the reasons set forth above, the trial court properly dismissed plaintiffs' complaint where plaintiffs failed to allege facts demonstrating that attorney Johnson's alleged malpractice proximately caused them damages. However, we reverse the trial court's designation of that dismissal as "with prejudice."

¶ 39        Affirmed in part and reversed in part.

**No. 1-20-0330**

| | |
|---|---|
| **Cite as:** | *Uskup v. Johnson*, 2020 IL App (1st) 200330 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2019-L-1114; the Hon. Margaret Brennan, Judge, presiding. |
| **Attorneys for Appellant:** | Michael C. Bruck and Timothy J. McInerney, of Spellmire Bruck LLP, of Chicago, for appellants. |
| **Attorneys for Appellee:** | Michael J. Meyer and Jeremy N. Boeder, of Tribler Orpett & Meyer, P.C., of Chicago, for appellee. |