2023 IL App (1st) 220269-U

FIRST DISTRICT,
FIRST DIVISION
May 15, 2023

No. 1-22-0269

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| ILHAN USKUP and TIMUR USKUP, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 2021 L 7856 |
| | ) | |
| JOSEPH C. JOHNSON, | ) | Honorable |
| | ) | Mary Colleen Roberts, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Lavin and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1     *Held*: We affirmed the dismissal of plaintiffs' legal malpractice suit, since plaintiffs did not allege facts from which one could reasonably infer they suffered damages as a result of the defendant attorney's alleged negligence.

¶ 2     Plaintiffs Ilhan Uskup and Timur Uskup filed a legal malpractice action against defendant Joseph Johnson based on his drafting of trust documents for their deceased father. Plaintiffs alleged that the trust documents contained ambiguous wording which caused the successor trustee to file a petition to interpret the terms of the trust. In the ensuing proceedings, the trust

incurred over $300,000 in legal fees that would otherwise have been distributed to beneficiaries of the trust, including plaintiffs.

¶ 3        In *Uskup v. Johnson*, 2020 IL App (1st) 200330, ¶ 1 (*Uskup I*), we affirmed the trial court's dismissal of plaintiffs' complaint for failure to state a cause of action but "reverse[d] its designation of that dismissal as being 'with prejudice.' " Plaintiffs subsequently filed an amended complaint which was also dismissed. For the reasons that follow, we affirm.

¶ 4                                    BACKGROUND

¶ 5        In 1989, Ergin Uskup retained attorney Joseph Johnson to create the Ergin Uskup Living Trust (trust). At the time, Ergin was married to Sezgin Uskup and had three children from a prior marriage, including plaintiffs. (The third child is not involved in this litigation.)

¶ 6        In 2011, at Ergin's request, Johnson drafted a restatement of the trust agreement (the 2011 restatement) providing that, upon Ergin's death, the trust estate was to be distributed 40% to Sezgin, if she survived him; 18% to each child, if they survived him, or else to their descendants; and 6% to Ergin's brother, if he survived Ergin. Section 4.01(d) provided that, during his lifetime, Ergin had "the power to amend or revoke [the] trust, in whole or in part." Section 15.04(b) stated: "Notwithstanding my right to amend this agreement, as described in Section 4.01(d), under no circumstances shall I have the right to reduce the percentage of My Trust Property that is provided in this agreement for my spouse, Sezgin, unless Sezgin approves such amendment in writing." Section 15.02(a) provided that "[i]f my marriage to my spouse shall be dissolved during my lifetime, then from and after such dissolution my spouse shall cease to be a beneficiary *** and shall be treated for purposes of interpreting this agreement as though my spouse predeceased me."

¶ 7     In 2015, Sezgin filed for dissolution of marriage. While the dissolution proceedings were pending, on May 31, 2016, Johnson drafted an amendment (the 2016 amendment) directing the trustee "to administer the above Trust Agreement in the same manner as if my wife, Sezgin G. Uskup, had died prior to the date of this Amendment." Sezgin did not approve this amendment. Ergin died on August 7, 2016, while still married to Sezgin.

¶ 8                                   The Trust Litigation

¶ 9     On November 30, 2016, the successor trustee filed a petition to interpret the terms of the trust, noting the conflicts between section 4.01 of the restatement, which gave Ergin the right to amend or revoke his trust; section 15.04(b), which required Sezgin's consent to reduce the percentage of trust property provided for her; and the 2016 amendment, which directed the trustee to treat Sezgin as having predeceased Ergin. *The Chicago Trust Company, N.A., v. Uskup*, No. 16-CH-15492 (Cir. Ct. Cook County) (henceforth, the trust litigation). The successor trustee alleged that it was unable to distribute the trust funds until the ambiguity was resolved.

¶ 10    Sezgin and plaintiffs were named as parties to the litigation. Sezgin argued that, pursuant to section 15.04(b), the 2016 amendment was ineffective to reduce her interest under the trust. Under her interpretation, she would have received approximately $1.9 million, representing 40% of the trust estate. Plaintiffs contended that the trust documents were ambiguous and the court should construe them so as to effectuate Ergin's intent to eliminate Sezgin's interest. They argued that although section 15.04(b) barred Ergin from reducing "the percentage" that would pass to Sezgin after his death, he retained power under section 4.01(d) to revoke the trust completely (thus indirectly eliminating Sezgin's interest) or otherwise "change the Trust Agreement in a way in which Sezgin's beneficiary interest no longer existed." Plaintiffs also

argued that section 15.04(b) did not prevent Ergin from accelerating the provisions of section 15.02(a) that treated Sezgin as predeceased.

¶ 11     After one and a half years of litigation, on July 2, 2018, the trial court entered judgment on the pleadings in favor of plaintiffs, finding that the 2016 amendment was valid and operated to eliminate Sezgin's interest. The court agreed with plaintiffs that the trust agreement was "patently ambiguous" and adopted plaintiffs' interpretation of its provisions. Specifically, it found that, notwithstanding section 15.04(b), Ergin retained power to (1) revoke the trust, (2) modify the trust to remove Sezgin's beneficiary interest entirely, and/or (3) accelerate the provisions of section 15.02(a) that treated Sezgin as predeceased. Furthermore, "if Sezgin was predeceased at the time of the amendment's execution, Ergin would not have needed her written approval to amend the Trust as to her beneficiary interest, simply because the interest did not exist any more." Accordingly, the court found that the 2016 amendment eliminated Sezgin's interest in the trust.

¶ 12     As a result of the trust litigation, the trust incurred $304,400.25 in legal expenses, and plaintiffs incurred $29,525.65 in attorney fees that were not reimbursed by the trust.

¶ 13                                  The Present Litigation

¶ 14     On February 1, 2019, plaintiffs filed the instant legal malpractice suit against Johnson, alleging that he acted negligently by (1) drafting the 2016 amendment "in a manner that made the Trust 'patently ambiguous' and subject to litigation"; (2) "fail[ing] to revoke and thereafter restate the Trust" in order to eliminate Sezgin as a beneficiary of the trust; and (3) "[f]ail[ing] to prepare non-ambiguous estate planning documents that carried out Ergin's intent to eliminate Sezgin as a beneficiary of the Trust and to provide for the remaining beneficiaries." Plaintiffs further alleged that they sustained damages as a result of this negligence—*i.e.*, the legal fees that

the trust paid that would otherwise have been distributed to them, as well as the legal fees they personally incurred—and "[h]ad Defendant complied with [his] duty of care and otherwise not been negligent, [plaintiffs] would not have been damaged as aforesaid."

¶ 15    The trial court granted Johnson's motion to dismiss under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2018)), finding that plaintiffs did not sufficiently allege that Johnson's alleged negligence was the proximate cause of their injuries. On appeal, we affirmed the dismissal:

> "[P]laintiffs were required to demonstrate that, if attorney Johnson had drafted the trust documents differently, they—and the trust—would not have incurred the attorney fees that they are claiming as damages. No such allegation appears in the complaint. Plaintiffs do not allege that, absent the negligent drafting, there would have been no trust litigation. Nor do plaintiffs allege that, even if there was litigation, it would have resulted in fewer attorney fees. Instead, plaintiffs simply make a blanket allegation that '[h]ad [attorney Johnson] complied with [his] duty of care and otherwise not been negligent, [plaintiffs] would not have been damaged as aforesaid.' *** [S]uch an allegation is not sufficient to demonstrate that they would not have incurred the attorney fees absent attorney Johnson's negligence." *Uskup I*, 2020 IL App (1st) 200330, ¶ 35.

¶ 16    Since "plaintiffs did not have the opportunity to amend their complaint to attempt to remedy any deficiencies," we reversed the designation of the dismissal as being "with prejudice." *Id.* ¶ 36.

¶ 17    Following our decision in *Uskup I*, on September 28, 2021, plaintiffs filed an amended complaint in which they added allegations that Johnson:

"d. Failed to advise Ergin of all foreseeable risks attendant to the strategy of attempting to eliminate Sezgin's beneficial interest by drafting the Amendment, including but not limited to the risk that Amendment would create an ambiguity in the Trust and cause costly litigation over the proper Trust construction;

e. Failed to advise Ergin of all reasonable alternatives to drafting the Amendment, including the alternative of revoking and restating the Trust;

f. Exposed Ergin and his intended beneficiaries to a risk Ergin did not knowingly and voluntarily assume, to wit, that by drafting the Amendment his Trust would be rendered ambiguous and his Trust would be diminished through litigation over the proper Trust construction."

¶ 18    Plaintiffs alleged that if Johnson had not drafted the 2016 amendment and had instead revoked and reinstated the trust, the trust "would not have been ambiguous" and the trustee would not have initiated the trust litigation "because there would be no ambiguity to construe." Moreover, "there would have been *** no colorable legal basis for Sezgin to challenge Ergin's Trust" and, as a result, "Sezgin either would not have challenged the trust or any challenge would have been promptly dismissed with little or no cost to Plaintiffs or the Trust." Thus, "had [Johnson] properly drafted the trust documents, [plaintiffs] and the Trust would not have incurred the attorneys' fees [plaintiffs are] claiming as damages."

¶ 19    Johnson filed a section 2-615 motion to dismiss the amended complaint, arguing that plaintiffs still failed to allege facts to establish proximate cause. He pointed out that "[t]hough Plaintiffs make vague complaints of an 'ambiguity' in the 'trust,' they make no allegation that Johnson's alleged error in drafting an ambiguous 2011 Restatement caused them any damages." He further argued that "it would require rank speculation to reach the conclusion that a

'revocation and restatement' would have reached a different result than did the revocation effected via the 2016 Amendment."

¶ 20    On January 28, 2022, the trial court granted Johnson's motion to dismiss, finding that plaintiffs' amended complaint did not allege sufficient facts to establish that Johnson's alleged negligence proximately caused their injuries:

"Although Plaintiffs have alleged that they would not have suffered damages or that litigation would have been less expensive had Defendant drafted the trust documents differently, these allegations are conclusory. While the Court is required to draw all reasonable inferences in the light most favorable to the plaintiffs, the Court is not permitted to engage in speculation."

¶ 21                                                                ANALYSIS

¶ 22    In ruling upon a section 2-615 motion to dismiss, the court considers whether the allegations in the complaint are sufficient to state a cause of action upon which relief may be granted. *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003). "Because Illinois is a fact-pleading jurisdiction, a plaintiff must allege facts, not mere conclusions, to establish his or her claim as a viable cause of action." *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305 (2008). All well-pleaded facts in the complaint and all reasonable inferences that may be drawn from those facts are taken as true, and we construe the allegations in the complaint in the light most favorable to plaintiffs. *Young v. Bryco Arms*, 213 Ill. 2d 433, 441 (2004). We review the trial court's grant of a section 2-615 motion to dismiss *de novo*. *Id.* at 440.

¶ 23    To prevail in a legal malpractice suit, plaintiff must plead and prove that (1) the defendant attorney owed him a duty of due care, (2) the defendant breached that duty, and (3) as a proximate result, plaintiff incurred damages. *Nettleton v. Stogsdill*, 387 Ill. App. 3d 743, 753

(2008). "[A] legal malpractice plaintiff may recover as actual damages the attorney fees incurred as a result of the defendant's malpractice, so long as the plaintiff can demonstrate she would not have incurred the fees in the absence of the defendant's negligence." *Id*. Conversely, "[u]nless the client can demonstrate that he has sustained a monetary loss as the result of some negligent act on the lawyer's part, his cause of action cannot succeed." *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 307 (2005). Although such a demonstration always "deals in some degree of speculation," the client cannot prevail where "the speculation required *** is overwhelming." *Glass v. Pitler*, 276 Ill. App. 3d 344, 354 (1995).

¶ 24        Plaintiffs claim to have incurred legal fees because of Johnson's alleged negligence in (1) drafting the 2011 restatement in an ambiguous manner and (2) seeking to disinherit Sezgin via the 2016 amendment instead of "using one of the non-ambiguous available ways to do so," such as revoking and restating the trust.

¶ 25        As discussed in our prior opinion, the language of the 2011 restatement was ambiguous, since sections 4.10(d) and 15.04(b) created "more than one reasonable interpretation of Ergin's intent with respect to Sezgin's interest." *Uskup I*, 2020 IL App (1st) 200330, ¶ 25. Initially, Johnson claims that "plaintiffs make no allegation or argument" that he should have drafted the 2011 restatement in an unambiguous manner. In their amended complaint, plaintiffs state that the trustee filed the Trust Litigation "[d]ue to the ambiguities Defendant drafted into the Trust." Plaintiffs further allege that "[h]ad Defendant not drafted the ambiguous Trust, there would be no reason for the trustee to file, and it would not have filed, the Trust Litigation because there would have been no ambiguity for a court to construe." Construing these statements in the light most favorable to plaintiffs (*Young*, 213 Ill. 2d at 441), plaintiffs have alleged negligence in the drafting of the 2011 amendment.

¶ 26    However, plaintiffs make no allegations as to how a non-negligent attorney could have drafted the 2011 restatement to avoid ambiguity. See *Nettleton*, 387 Ill. App. 3d at 753 (legal malpractice plaintiff must "demonstrate she would not have incurred the fees in the absence of the defendant's negligence"). Plaintiffs' sole allegation in this regard is a vague, conclusory statement that "not draft[ing] the ambiguous Trust" would have averted the trust litigation. Accordingly, plaintiffs have not alleged sufficient facts to establish that any negligence in drafting the 2011 restatement proximately caused their injury.

¶ 27    Plaintiffs additionally allege that Johnson was negligent in drafting the 2016 amendment, which directed the trustee "to administer the above Trust Agreement in the same manner as if my wife, Sezgin G. Uskup, had died prior to the date of this Amendment." They assert that if Johnson had pursued an alternative means of disinheriting Sezgin—"for instance, revok[ing] and restat[ing] the Trust"—(1) the trustee would not have initiated the trust litigation "because there would be no ambiguity to construe," and (2) Sezgin would have "[l]ack[ed] any colorable legal basis to challenge" the trust, and, as a result, "Sezgin either would not have challenged the Trust or any challenge would have been dismissed with little or no cost to Plaintiffs or the Trust."

¶ 28    Plaintiffs' central contention, namely, that Sezgin would have lacked a colorable legal basis to challenge the trust if Johnson had revoked and restated the trust in 2016, is not a factual assertion but a legal conclusion that is unsupported by the facts set forth in the amended complaint. Although section 4.01(d) grants Ergin the power to amend or revoke the trust, such power is expressly limited by section 15.04(b), which provides: "[U]nder no circumstances shall I have the right to reduce the percentage of My Trust Property that is provided in this agreement for my spouse, Sezgin, unless Sezgin approves such amendment in writing." Thus, on its face, the trust is unclear as to whether Ergin would require Sezgin's written approval to revoke and

restate the trust if such action would reduce the percentage of trust property provided to her. Similarly, the trust is unclear as to whether Ergin could amend the trust to remove Sezgin's beneficiary interest entirely without her approval.

¶ 29　　The trial court in the trust litigation acknowledged these conflicts, stating that "on its face, the Trust Agreement is patently ambiguous." After nearly two years of litigation, including extensive motion practice and argument by the parties, the trial court ultimately adopted an interpretation of these conflicting provisions that was favorable to plaintiffs, finding that section 15.04(b) did not prevent Ergin from "revoking the Trust Property or any beneficiary interest as a whole," and finding that the 2016 amendment validly "effectuated a change of beneficiary by eliminating [Sezgin's] interest from the trust." However, this outcome would not have been known or obvious to the parties in 2016 when Ergin initially directed Johnson to disinherit Sezgin. It would require overwhelming speculation to conclude that, if Johnson had revoked and restated the trust in 2016, Sezgin would not have challenged such action as being in violation of section 15.04(b), or that any litigation filed by Sezgin "would have been promptly dismissed with little or no cost." See *Glass*, 276 Ill. App. 3d at 354 (legal malpractice plaintiff cannot prevail where "the speculation required *** is overwhelming").

¶ 30　　Plaintiffs' citations to *Nettleton*, 387 Ill. App. 3d 743, and *Union Planters Bank v. Thompson Coburn LLP*, 402 Ill. App. 3d 317 (2010), are unavailing. In *Nettleton*, 387 Ill. App. 3d 743, defendants represented plaintiff in connection with a dissolution of marriage petition. Due to defendants' negligence, plaintiff's petition was dismissed, and plaintiff "was required to incur attorney fees to file and prosecute [a] second dissolution petition." *Nettleton*, 387 Ill. App. 3d at 750. Citing the proposition that "[a] successful legal malpractice claim places the plaintiff in the same position that she would have occupied but for the attorney's negligence" (*id.* at 751-

52), we held that plaintiff was entitled to recover as actual damages the fees she incurred due to defendants' malpractice (*id.* at 753).

¶ 31         Similarly, in *Union Planters*, 402 Ill. App. 3d 317, plaintiff retained counsel to advise it as to the risks of certain potential courses of action. Counsel failed to advise plaintiff as to the risks of appointing a successor corporate trustee; when plaintiff appointed the trustee, it was sued, forced to pay legal expenses in its defense, and ultimately settled. *Id.* at 344. Plaintiff pled and proved that had it been aware of the risks, it would not have taken that course of action. *Id.* at 347. Under these facts, plaintiff "was damaged by being forced to engage in litigation it otherwise would not have been required to engage in" and was entitled to recover the attorney fees it incurred. *Id.* at 346-47.

¶ 32         Here, in contrast to *Nettleton* and *Union Planters*, plaintiffs have not alleged facts from which one could reasonably infer they incurred additional legal fees due to Johnson's alleged malpractice. Due to the ambiguity inherent in the 2011 restatement, even if Johnson had chosen to revoke and restate the trust in 2016 as a means of disinheriting Sezgin, we cannot say that Sezgin would not have challenged the restated trust or that such a challenge would have resulted in lower attorney fees than the fees incurred in the actual trust litigation.

¶ 33         Plaintiffs' reliance on *In re Estate of Powell*, 2014 IL 115997, is likewise misplaced. The underlying suit in *Powell* was a wrongful death suit in which the defendant attorneys procured a settlement for, among other parties, the decedent's disabled adult son Powell. Powell's portion of the settlement was placed in a joint bank account controlled by the decedent's wife, who subsequently withdrew almost all the funds. *Powell*, 2014 IL 115997, ¶¶ 5-6. The public guardian for Powell brought a legal malpractice action against the attorneys, claiming that they acted negligently in not seeking to have a guardian appointed for Powell's estate to protect his

interest in the settlement funds and alleging that, if they had done so, he would not have been deprived of those funds. *Id.* ¶ 24. Under these facts, our supreme court held that the guardian sufficiently alleged that Powell suffered monetary injury as a proximate result of defendants' failure to protect his interest in the settlement. *Id.* Unlike in *Powell*, where it was apparent that defendants' alleged negligence deprived Powell of his settlement monies, the well-pled allegations in plaintiffs' complaint, even construed in the light most favorable to plaintiffs, do not establish that Johnson's alleged negligence deprived them of trust funds or otherwise caused them monetary injury.

¶ 34                                                    CONCLUSION

¶ 35            For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 36            Affirmed.